**David JENKINS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 261, 2010.

Supreme Court of Delaware.

Submitted: Sept. 15, 2010.
Decided: Dec. 6, 2010.

Court Below: Superior Court of the State of Delaware in and for New Castle County, Cr. I.D. No. 0104000981.

Michael W. Modica, Esquire, Wilmington, Delaware, for Appellant.

Susan Dwyer Riley, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

JACOBS, Justice:

David Jenkins ("Jenkins"), the defendant-below, appeals from a Superior Court order finding him in violation of his probation, revoking his previous Level II probation sentence, and sentencing him to four years and ten months of incarceration at Level V supervision. On appeal, Jenkins claims that: the trial court's findings are not supported by competent evidence, his due process rights were violated, and the sentence imposed was an abuse of discretion. We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Jenkins pled guilty to one count each of trafficking in cocaine ("trafficking")[1] and maintaining a vehicle for the keeping of controlled substances ("maintaining a vehicle").[2] The Superior Court sentenced him as follows: (a) for trafficking, ten years of Level V incarceration, suspended after four years (minimum mandatory) for the balance at Level III probation; and (b) for maintaining a vehicle, three years at Level V incarceration, suspended immediately for three years' probation.

In 2005, Jenkins was charged with violating his probation after being arrested on new, unrelated drug charges.[3] Jenkins contested the charges and moved to suppress evidence in both the underlying criminal case and his violation of probation ("VOP") hearing.[4] At the VOP hearing, the motion to suppress was dismissed for "failure to prosecute," because Jenkins did not appear.[5] At a rescheduled VOP hearing, the judge held that Jenkins had failed properly to renew his motion. Based on the evidence presented, the trial court resentenced Jenkins to six years at Level V, suspended after four years for decreasing levels of probation (for trafficking), and three years at Level V, suspended immediately for eighteen months at Level III probation (for maintaining a vehicle).

Jenkins' motion to suppress was granted in the co-pending criminal case, however,

---

1. 16 *Del. C.* § 4753A(a)(2).

2. 16 *Del. C.* § 4755(a)(5).

3. *Jenkins v. State,* 903 A.2d 323 (Table), 2006 WL 1911096, at *1 (Del.2006) (hereinafter *"Jenkins I"*). An administrative warrant was filed in Jenkins' 2005 VOP hearing based on the new drug charges.

4. A summary of the 2005 VOP hearing can be found in this Court's opinion affirming Jenkins' resentencing. *See id.*

5. The VOP hearing and suppression hearing were scheduled for the same day. Jenkins apparently appeared at court, but left before the hearings began.

and those charges were later dismissed.[6] Thereafter, Jenkins appealed his 2005 VOP sentence on the ground that the Superior Court erred in finding that he had violated his probation based on evidence that ultimately was suppressed.[7] This Court affirmed, holding that Jenkins had waived his right to present a motion to suppress in the 2005 VOP hearing.[8]

Jenkins later moved for post-conviction relief, which the Superior Court denied, and this Court dismissed Jenkins' direct appeal as untimely.[9] Between October 2006 and August 2008, Jenkins filed three motions to modify or reduce his 2005 VOP sentence, all of which the Superior Court denied.

In April 2009, Jenkins again violated his probation and was resentenced to two years at Level V, with credit for nine days previously served, suspended after thirty days for eighteen months at Level III (trafficking charge); and three years at Level V, suspended for eighteen months of concurrent Level III probation (maintaining a vehicle).

On January 8, 2010, the police arrested Jenkins on four new drug charges: (1) trafficking in cocaine;[10] (2) possession with intent to distribute cocaine;[11] (3) maintaining a dwelling for keeping controlled substances;[12] and (4) possession of drug paraphernalia.[13] The State filed an administrative warrant, listing the new drug charges, together with other technical violations, as grounds for finding Jenkins in violation of his probation.

Jenkins contested the administrative warrant, and a VOP hearing was scheduled for March 3, 2010. Jenkins' counsel requested a continuance to have additional time to review discovery. The Superior Court granted the continuance, and rescheduled the contested VOP hearing to April 14, 2010. On March 29, 2010, Jenkins moved to suppress the evidence in the co-pending criminal trial. He did not, however, file a suppression motion in connection with the upcoming April 14th contested VOP hearing.

At the April 14th VOP hearing, the trial judge heard testimony from Jenkins' probation officer, Jeffery Boykin ("Boykin"), and Corporal Dewey Stout, a detective with the Delaware State Police drug unit. Boykin testified that Jenkins' technical violations included "failure to report a change in address" and "two dirty urine screens for marijuana." As for the address change, Boykin testified that although Jenkins reported his address as 1000 Wright Street in Wilmington (the "Wright Street" residence), he was actually living at 917 Barrett Lane in Newark (the "Barrett Lane" residence). Corporal Stout testified that he never saw Jenkins at the Wright Street residence,[14] but observed him at the

---

6. *Jenkins I*, 2006 WL 1911096, at *1.

7. *Id.* at *2.

8. *Id.*

9. *See Jenkins v. State*, 937 A.2d 140 (Table), 2007 WL 3262144 (Del.2007) (hereinafter *"Jenkins II "*).

10. 16 *Del. C.* § 4753(A)(a)(2).

11. 16 *Del. C.* § 4751.

12. 16 *Del. C.* § 4755(a)(5).

13. 16 *Del. C.* § 4771.

14. Corporal Stout testified that he conducted spot checks of Jenkins' Wright Street residence, but never saw Jenkins there. After the first controlled buy, Corporal Stout followed Jenkins to the Barrett Lane address. Stout also testified that the police conducted additional surveillance of the Barrett Lane address, and observed Jenkins at the residence and exiting from the residence during the second controlled buy.

Barrett Lane residence on multiple occasions.[15] When Corporal Stout arrested Jenkins, he found a key to the Barrett Lane residence, and during a search of that residence he also found a lease agreement for Barrett Lane which listed only Jenkins as the lessee.[16]

Regarding the new drug charges, Corporal Stout testified that he had received information from a confidential source ("CS") that Jenkins was selling cocaine. Based on that information, Corporal Stout conducted two "controlled buys" by the CS from Jenkins.[17] Corporal Stout testified that the substance the CS turned over from the first controlled buy "field-tested positive." After the second controlled buy, Corporal Stout met with the CS, who again turned over "an amount of cocaine."

Based on the results of the two controlled buys and his surveillance of the Barrett Lane residence, Corporal Stout obtained a warrant to search that residence. Using Jenkins' key, he searched the Barrett Lane residence and found a lease agreement bearing Jenkins' name and 34.1 grams of powder cocaine, separated into three bags. He also found a small digital scale, a cocaine press, a bottle of inositol,[18] and $2,715 in cash.

Jenkins' counsel requested the sentencing judge to disregard the testimony regarding the new drug charges, because a

suppression motion had been filed in the co-pending criminal case. Noting that Jenkins had not filed a suppression motion with respect to the VOP hearing, the sentencing judge found that there was "ample evidence to find the defendant guilty of violating his probation by delivering controlled substances by trafficking." At the April 14th VOP hearing, the judge reimposed all of the suspended jail time from Jenkins' earlier (2001) convictions for trafficking and maintaining a vehicle, based on Jenkins' repeated probation violations.

On June 7, 2010, the Superior Court granted the suppression motion in the co-pending criminal case, and dismissed all of the charges. Jenkins now appeals from his April 14th VOP sentencing.

## ANALYSIS

On appeal, Jenkins advances three reasons why this Court should reverse the trial court's revocation of his probation. Jenkins admits that he failed to raise any of these issues at the April 14th contested VOP hearing. He asserts, however, that the trial court's VOP determination was plain error and deprived him of substantial rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 7 of the Delaware Constitution.[19]

15. Corporal Stout observed the Barrett Lane residence on approximately seven to ten occasions at various times and on different days.

16. The lease agreement itself was never produced.

17. A "controlled buy" is where the police meet with the CS and provide the CS with state funds to complete a drug transaction. The CS turns over the drugs from the sale, and the police ran a field test on the contents.

18. Inositol is a sugar that is readily purchasable from health food stores such as GNC. It is sold as a white powder and is commonly used

as a cutting agent in preparing cocaine for sale.

19. Jenkins argues that this Court should apply the "interest of justice" exception pursuant to Supreme Court Rule 8, which provides: "Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Because we address Jenkins' claim under the plain error review standard, we do not reach his arguments that review is warranted under Rule 8.

■ This Court normally reviews a trial court's revocation of a defendant's probation for abuse of discretion.[20] Jenkins' claims, however, are reviewable only for plain error because he failed to assert them at the April 14th contested VOP hearing.[21] Under the "plain error" doctrine, we are "limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[22]

I. *Jenkins' Claim That There Was Insufficient Evidence To Support The Trial Court's Finding That He Violated His Probation*

Jenkins first claims that the State failed to present competent evidence to support the trial court's finding, by a preponderance of the evidence, that he violated his probation. He argues that the State's evidence was based predominately on hearsay, rather than upon the first-hand knowledge of testifying witnesses.[23] Jenkins also contends that the State provided "no evidence" in support of the reported "positive" urine screens.

■ Although hearsay evidence is admissible in VOP hearings, our law requires "some competent evidence to prove the violation asserted."[24] Further, if the defendant denies violating his probation, there must be some competent evidence linking the defendant to the crime.[25] The evidence must "reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of the probation."[26] Although the State does not need to establish guilt beyond a reasonable doubt, probation cannot be revoked solely upon the basis of testimony from a witness who has "no first-hand knowledge of the events constituting the violations."[27]

■ Jenkins' claim fails for three reasons. First, his argument that the State presented insufficient or no evidence to

---

20. *Collins v. State*, 897 A.2d 159, 160 (Del. 2006); *Brown v. State*, 249 A.2d 269, 271–72 (Del.1968).

21. DEL. SUP.CT. R. 8; *see also Cruz v. State*, 990 A.2d 409, 412 (Del.2010).

22. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

23. Jenkins alleges the following as hearsay: (1) that a CS provided the police with information concerning Jenkins selling cocaine; (2) the CS's claim that he purchased cocaine from Jenkins during the controlled buys; (3) that the substance obtained from the second controlled buy tested positive as cocaine; (4) the verbal statement that the lease found contained Jenkins' name; and (5) the claim that the 34.1 grams of cocaine seized at the Barrett Lane residence had tested positive.

24. *Collins*, 897 A.2d at 160 (quoting *Brown*, 249 A.2d at 272).

25. *Id.* at 161 ("[A] defendant's admission of the alleged crime is considered sufficient competent evidence to revoke probation, but where the defendant has not admitted to violating his probation, some competent evidence linking the defendant to the crime is necessary.").

26. *Id.* at 160. For example, this Court has previously held that a defendant's positive drug test results and admission of using drugs are sufficient to support a finding of a probation violation. *Melody v. State*, 808 A.2d 1204 (Table), 2002 WL 31355234, at *2 (Del.2002).

27. *Collins*, 897 A.2d at 160–61; *Simmons v. State*, 788 A.2d 132 (Table), 2001 WL 175677, at *1 (Del.2001) (holding that it was an abuse of discretion to revoke the defendant's probation based solely on testimony from a witness with no first-hand knowledge of the alleged incidents where the State failed to present any reports from the facility where the alleged violations took place, and where the defendant denied the allegations).

prove his failure to report a change of address and failed urine screens is unfounded. Boykin testified about Jenkins' failure to report his address change and the positive urine screens, and Jenkins presented no evidence to controvert that testimony. Nor did Jenkins dispute or challenge Boykin's testimony at the hearing or suggest that Boykin's testimony was not credible.[28]

■ Second, Corporal Stout testified that he personally conducted most of the surveillance and investigation leading to Jenkins' arrest on the new drug charges. Corporal Stout personally observed Jenkins at the Barrett Lane residence on multiple occasions, and he led the search of that residence where the lease agreement, cocaine, and drug paraphernalia were found. Therefore, Corporal Stout's testimony was based on firsthand observations of which he had personal knowledge. It was not hearsay.

■ Third, the trial court was permitted to consider any competent evidence in deciding whether to revoke a defendant's probation. Jenkins contends that because it is hearsay, the CS information should not be considered "competent evidence." But, as this Court has stated, the evidence need only "reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of the probation."[29] Here, the trial judge had sufficient independent evidence, including evidence of uncontested technical violations as well as Corporal Stout's and Boykin's testimony, upon which to find that Jenkins had violated his probation.

The trial judge did not commit plain error in revoking Jenkins' probation.

## II. *Jenkins' Claim That He Was Denied His Due Process Rights*

Next, Jenkins claims that his due process rights under the United States and Delaware Constitutions were violated because: (1) he was not given written notice of the alleged violations, and (2) the trial court erroneously considered his "uncharged misconduct" (the two controlled buys) in revoking his probation, because that misconduct was not listed on the administrative warrant.

### A. *Jenkins' Written Notice Claim*

■ Although a defendant accused of a probation violation is not entitled to a formal trial,[30] the United States Supreme Court has held that in a VOP hearing certain "minimum requirements of due process" must be satisfied.[31] In Delaware, those requirements are set forth in Superior Court Criminal Rule 32.1. That Rule provides that a defendant accused of a probation violation is entitled to: (i) a bail hearing; (ii) written notice of the alleged violation; (iii) disclosure of the evidence against the person; (iv) an opportunity to appear and present evidence; (v) an opportunity to question adverse witnesses; and (vi) notice of the right to retain counsel.[32]

Jenkins' due process claim lacks merit. Even assuming that Jenkins did not receive written notice of the alleged violations, he had prior *actual* notice. The

---

28. A review of the April 14th contested VOP hearing transcript reveals that Jenkins did not present any evidence in his defense.

29. *Collins*, 897 A.2d at 160.

30. 11 *Del. C.* § 4334(c) (providing that a VOP hearing may be informal or summary).

31. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

32. Del.Super. Ct.Crim. R. 32.1(a).

record shows that Jenkins knew about the drug charges, and the technical violations of which he was charged, before the April 14th hearing. On March 23rd, Jenkins had moved to suppress evidence in the co-pending criminal case. In addition, before the April 14th VOP hearing began, Jenkins' counsel stated his understanding that new drug charges and two dirty urine screens were the basis for the alleged VOP. Because he had actual notice of the violations, Jenkins cannot now claim that his due process rights were violated.

### B. The "Uncharged Misconduct" Claim

■ Jenkins also claims that his due process rights were violated because the trial judge improperly considered Corporal Stout's testimony about "uncharged misconduct" (i.e., the two controlled buys). Jenkins argues that he did not have fair notice of what the State intended to prove at the hearing, because the two controlled buys were not listed or referenced on the administrative warrant. He further contends that the State's evidence was irrelevant and unfairly prejudicial, because the sentencing judge likely believed that Jenkins had participated in the two controlled buys and, therefore, was criminally responsible for the items seized at the Barrett Lane residence.

Again, assuming without deciding that the disclosure Jenkins received did not mention the two controlled buys,[33] Jenkins' claim cannot succeed because he has not shown prejudice or that the Superior Court committed plain error. Jenkins never objected to Corporal Stout's testimony about the two controlled buys. Nor did his defense counsel cross-examine Stout about them, despite having the opportunity to do so at the hearing. Further, the technical violations alone would have been enough to revoke Jenkins' probation, and

Jenkins never contested those violations. In short, Jenkins cannot show that the evidence regarding the two controlled buys was prejudicial, or that the trial judge's VOP determination was plain error.

### III. Jenkins' Claim That The Sentencing Judge Abused His Discretion By Relying On Impermissible Factors And Exhibited A Closed Mind

In support of his third claim, Jenkins advances two reasons why the sentencing judge abused his discretion by imposing the maximum jail sentence: (1) the decision was based on inaccurate information regarding Jenkins' prior federal conviction, and (2) the judge exhibited a "closed mind" by ignoring the fact that the search warrant was blatantly defective.

### A. Jenkins' Federal Conviction Claim

■ Jenkins contends that the judge must have based his sentencing decision on Jenkins' earlier federal conviction, because the judge did not expressly reject the prosecutor's argument based on the prior federal conviction. This claim is unfounded. The State told the trial court that Jenkins had a previous federal conviction for drug trafficking, but Jenkins was actually convicted of credit card fraud. The record shows that Jenkins himself corrected the State when it misspoke. At the time of sentencing, therefore, the sentencing judge was fully aware that Jenkins had actually been convicted for credit card fraud, and not federal drug trafficking. Although Jenkins argues that the sentencing judge did not expressly reject the State's inaccurate statement, there is no record evidence that the judge based his decision on it either. Jenkins has failed to show that the sentencing judge's decision was plain error.

---

**33.** It is unclear what was disclosed in the discovery documents.

## B. *The "Closed Mind" Claim*

■ Finally, Jenkins argues that the sentencing judge exhibited a "closed mind" by not considering his suppression motion at the VOP hearing, and concluding that "it was unlikely one would be successful even in a prosecution." Jenkins claims that because the suppression motion was ultimately granted in his co-pending criminal case, the sentencing judge erred by failing to recognize that the search warrant was, on its face, legally defective.[34]

■ This Court's review of a sentence is limited to whether the sentence is within the statutory limits.[35] Where the sentence falls within those limits, "this Court will not find an abuse of discretion unless it is clear that the sentencing judge relied on impermissible factors or exhibited a closed mind."[36] A judge exhibits a "closed mind" where "the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[37] A judge is permitted to have "some preconceived notion about the proper sentence to be imposed," but cannot "have closed his mind upon the subject" before the proceeding.[38] That is, the judge must have an "open mind at least to the extent of receiving all information bearing on the question of mitigation."[39]

Jenkins has not shown that the sentencing judge acted with a "closed mind" by failing to consider any mitigating evidence, because Jenkins presented no mitigating evidence in his defense. In fact, Jenkins did not present any evidence at the hearing. Although Jenkins asserted that a suppression motion had been filed in the co-pending criminal case, he did not file a suppression motion in the contested VOP hearing, even though he knew that one should have been filed if he wanted the court to exclude the evidence.[40] Accordingly, when imposing the sentence, there was no reason for the sentencing judge not to consider the evidence resulting from the search and seizure, since no motion to suppress had been filed.[41] Although a suppression motion was later granted in the co-pending criminal case, it would have been improper for the sentencing judge to

34. The suppression motion in the co-pending criminal case was granted almost two months after the April 14th VOP hearing, on the basis that there were insufficient facts to support a nighttime search warrant. In Delaware, a nighttime search warrant requires additional probable cause to believe that the issuance of the nighttime warrant is necessary in order to prevent the escape or removal of the person or thing to be searched for. *See* 11 *Del. C.* § 2308.

35. *Siple v. State,* 701 A.2d 79, 83 (Del.1997); *Mayes v. State,* 604 A.2d 839, 842–43 (Del. 1992).

36. *Weston v. State,* 832 A.2d 742, 746 (Del. 2003).

37. *Id.*

38. *Osburn v. State,* 224 A.2d 52, 53 (Del. 1966).

39. *Id.*

40. For example, Jenkins had filed a suppression motion in both his 2005 contested VOP hearing as well as the co-pending criminal case.

41. This Court has not yet addressed whether the exclusionary rule should apply to violation of probation hearings. *LeGrande v. State,* 947 A.2d 1103, 1111 n. 42 (Del.2008); *Fuller v. State,* 844 A.2d 290, 293 (Del.2004) ("[W]e do not reach the State's argument that the exclusionary rule does not apply to probation revocation proceedings."). Two Superior Court cases have held that the exclusionary rule does not apply even where the defendant has timely moved for suppression in the VOP hearing. *See State v. Waters,* 2007 WL 1098120, at *2 (Del.Super.Ct. Apr. 11, 2007); *State v. Kinard,* 2005 WL 2373701, at *3 (Del.Super.Ct. Sep. 28, 2005) (noting the split in authority).

decide the search warrant's validity in the VOP hearing where that issue had not been properly raised. Jenkins has failed to show that the sentencing judge's decision was plain error.

## CONCLUSION

For the reasons stated above, the judgment of the Superior Court is affirmed.