# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMAR K. THOMPSON, | § | |
| | § | No. 489, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1209018130 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 9, 2018
Decided: July 24, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Tasha M. Stevens, Esquire, of the Office of Fuqua, Willard, Stevens & Schab, P.A., Georgetown, Delaware for Appellant.

Abby Adams, Esquire, of the Department of Justice, Georgetown, Delaware for Appellee.

**VAUGHN**, Justice:

In this appeal, Appellant Jamar K. Thompson challenges a Superior Court finding that he violated his probation. He asserts three claims. He first contends that his right to due process under Amendment XIV of the United States Constitution was violated because he was provided with an untimely and incomplete disclosure of the evidence against him, he was unavailable to testify, and a witness he intended to call was not permitted to testify. He next contends that the Superior Court violated his rights under Amendments IV and XIV of the United States Constitution and Article I § 6 of the Delaware Constitution by refusing to consider his argument, made at the hearing, that the evidence against him was the product of an unlawful search and seizure and should be suppressed. Finally, he contends that the evidence against him was insufficient to support a finding that he violated his probation. After considering Thompson's claims, we have concluded that the judgment of the Superior Court should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On July 4, 2017, at about 12:47 p.m., Officer DeMalto of the Governor's Task Force was driving an unmarked sport utility vehicle on Route 13 southbound in the area of Seaford. He noticed a gold Acura RL hastily weaving through traffic ahead of him. Traffic was heavy and the car was not signaling lane changes. The officer followed the Acura as it turned onto Brickyard Road. The driver of the Acura then

2

began following close behind a black sedan. Suddenly, the officer observed what he termed an "explosion" in the front of the Acura. Smoke and fluid spewed from under the hood. Believing the Acura had collided with the black sedan, the officer followed it as it pulled into the parking lot of the Service Tire Truck Center at Route 13 and Brickyard Road.

The officer pulled his vehicle behind the Acura, intending to check and make sure no one in the Acura was injured and to investigate why the car was following so closely behind the black sedan. He exited his vehicle and approached the Acura. The driver, Appellant Thompson, was the only one in the vehicle. The vehicle appeared to be "unstable, unsafe, and inoperable. There was a large amount of green fluid on the windshield and leaking from the hood area. There was a noticeable amount of smoke and steam coming from the hood area . . . ."[1]

Thompson explained to the officer that something in the car had malfunctioned, causing it to overheat and explode. For the safety of Thompson and the officer, Thompson was asked to get out of the vehicle.

As Thompson spoke to the officer outside the vehicle, he appeared to be nervous. He was looking off into the distance and avoided eye contact. He walked around the vehicle and tried to open the hood, stating that he needed to get to a nearby residence.

---

[1] App. to Appellant's Opening Br. at A42.

The officer asked Thompson for his driver's license and returned to his patrol vehicle to check Thompson's history. He learned that Thompson was on probation, and that he had an extensive criminal history with several drug and weapon offenses. Due to Thompson's nervous demeanor and his criminal history, the officer called a Town of Blades police officer who he knew was nearby to assist him. The officer also contacted a probation officer who was assigned to the Governor's Task Force to check on Thompson's probation compliance.

Office DeMalto returned to Thompson and asked him questions about his probation. Thompson told the officer he was compliant with his probation but he could not remember on which day in the prior week he had reported. The officer told Thompson that an officer with a K-9 would be arriving. Thompson then made an odd statement that the K-9 would probably alert to the green fluid coming out of his vehicle.

Officer DeMalto asked Thompson if he would consent to a search and Thompson declined. When the Blades officer arrived, Officer DeMalto asked him to use his narcotic-certified dog to conduct a free-air sniff of the vehicle. The K-9 alerted at the driver's door. The officer asked Thompson if there was "anything illegal inside the vehicle that would cause such an alert such as firearms, narcotics, or drug paraphernalia. . . . Thompson advised that it was his girlfriend's car and that

4

there wasn't anything illegal in the car that belonged to him."[2]  The officer asked Thompson to stand with the Blades officer, and he searched the Acura.  As the search began, Thompson told the officer that there was some marijuana in the center arm rest.  The officer located marijuana in the center arm rest, and also found a Smith & Wesson 9 millimeter handgun concealed under the front passenger seat, within arm's reach of Thompson when he was in the driver's seat.  The gun was loaded with a magazine containing fourteen 9 millimeter rounds.  The officer asked Thompson if his fingerprints would be on the gun, and Thompson said that they would.  The officer then searched Thompson.  The officer found $755 in United States Currency.  The substance in the center arm rest field-tested positive for marijuana.  The entire encounter, up to the point where the officer located the firearm, took about 20 minutes.

Officer DeMalto took Thompson back to the state police barracks for processing.  Thompson told the officer the cash did not belong to him.  Fingerprints were lifted from the gun, but the test results were inconclusive.  The gun was analyzed for DNA, but the result was not known at the time of the violation of probation ("VOP") hearing.  Thompson declined to be interviewed.

The Acura was registered to Sheneese Showell.  Shortly after Thompson's arrest she called Officer DeMalto and informed him that the firearm found in the car

---

[2] *Id.* at A47.

belonged to her and she would like to have it back. The officer told her it had been admitted into evidence and would not be immediately available to her. The gun was, in fact, registered to Ms. Showell.

Thompson was charged with Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon, Possession of Marijuana, and Following Too Closely. On July 13, 2017 the State dismissed the charges, subject to further investigation and a potential indictment at a later date. Because of the new charges, however, Thompson was also added to a VOP calendar scheduled for July 14. At that hearing, the State indicated that it would pursue the VOP despite dismissing the charges, and the VOP hearing was rescheduled for September 8, 2017.

On August 4, 2017 Thompson's counsel filed a Request for Discovery under Superior Court Criminal Rules 16 and 32.1. In early September, not having received a response, defense counsel emailed a deputy attorney general about discovery. The deputy responded that he had not received the request and forwarded a copy of the police report to defense counsel the day before the scheduled hearing.

The hearing proceeded on September 8. At the beginning of the hearing, Thompson's counsel objected to having received the police report only the day before the hearing. She also raised an objection that the disclosure of evidence was inadequate. She argued that she believed there was relevant evidence that was not

included in the police report. The Superior Court judge dealt with her objections by limiting the State's presentation of evidence to only what was contained in the police report that Thompson's counsel had received. Thompson's counsel also indicated that she had a witness present, Ms. Showell, but that the State had recommended that she obtain counsel to protect her against any criminal charges that may be brought against her in connection with her ownership of the firearm.[3] The judge indicated that he would deal with that issue as it came up. The State then proceeded with testimony from Officer DeMalto and Thompson's probation officer.

When the State rested, Thompson's counsel raised the issue of calling Ms. Showell as a witness. Counsel indicated to the Court that she had planned on calling Ms. Showell, who was present, as a witness, but that prior to the hearing the State advised Ms. Showell that she would need an attorney because of possible charges which might arise from her testimony. The judge then asked Thompson's counsel to proffer what her testimony would be. Thompson's counsel then proffered, in summary, that she would testify that she owned the gun, that the marijuana in the car was hers, and that the car was hers. She further proffered that Thompson had asked to borrow her car that morning to pick up his daughter. The judge then stated that he would accept that proffer as evidence. Thompson's counsel then indicated

---

[3] What these charges might be does not seem to be explained in the record.

7

that she would have called Thompson as a witness, but that he chose to exercise his Fifth Amendment right not to testify.

During closing arguments, Thompson's counsel attempted to argue that the new charges (except the traffic charge of following too closely) were the product of an unlawful search and seizure and that the evidence supporting the new charges should be suppressed. The judge responded that he would not consider such an argument on the grounds that suppression does not apply in VOP hearings.

At the conclusion of the hearing, the judge found that Thompson had violated his probation based on the evidence of the new charges.

On November 13, 2017, Thompson was indicted on the new charges. The current status of the new criminal case, however, is not included in the record of this proceeding.

## STANDARD OF REVIEW

Our standard of review for constitutional challenges is *de novo*.[4] To the extent we review the sufficiency of the evidence, it is for an abuse of discretion.[5] Our review of a Superior Court judge's revocation of a defendant's probation is for an abuse of discretion.[6]

---

[4] *Jenkins v. State*, 2004 WL 2743556, at *2 (Del. 2004).
[5] *Id.*
[6] *Kurzmann v. State*, 903 A.2d 702, 716 (Del. 2006).

8

## DISCUSSION

## I.

Thompson first contends that his right to due process under Amendment XIV of the United States Constitution was violated because he was provided with an untimely and incomplete disclosure of the evidence against him, he was unavailable to testify, and a witness he intended to call was not permitted to testify. This Court has previously recognized that a VOP hearing must satisfy requirements of due process.[7] Those requirements are set forth in Superior Court Criminal Rule 32.1.[8] They include: (a) written notice of the alleged violation; (b) disclosure of the evidence against the person; (c) an opportunity to appear and to present evidence on the person's own behalf; (d) the opportunity to question adverse witnesses; and (e) notice of the person's right to retain counsel.[9]

Thompson argues that the State failed to comply with the requirement that he be given disclosure of the evidence against him because the disclosure was untimely and incomplete. He contends that the disclosure was untimely because Officer DeMalto's police report was provided only a day before the hearing, giving him inadequate time to prepare a defense. He contends that the disclosure was incomplete because there was evidence that was not disclosed. He contends that the

---

[7] *Jenkins v. State*, 8 A.3d 1147, 1153 (Del. 2010).
[8] *Id.*
[9] Super. Ct. Crim. R. 32.1(a).

9

undisclosed evidence includes a police report prepared by the Town of Blades police officer, notes made by Officer DeMalto, SUSCOM recordings, any recording or record of the attempt to interview Thompson, and a copy of the search warrant.[10] He contends the inadequacy of the disclosure deprived him of the opportunity to effectively question adverse witnesses.

Although Thompson's counsel did file a request for discovery, Rule 32.1 does not require that the defendant request disclosure of the evidence to be used against him at the VOP hearing. Disclosure of the evidence under Rule 32.1 is an affirmative obligation of the State to be performed without any need for a request from the defendant. In this case, the docket shows that the hearing date of September 8, 2017 was set on July 26. The best practice on the part of the State would have been to send the police report to defense counsel promptly. Where, however, like here, the disclosure is made only a short time before the hearing, the defendant's remedy is to request a continuance of the VOP hearing. Although Thompson objected to the timeliness of disclosure at the hearing, he did not request a continuance.[11] Moreover, on appeal Thompson has not made a showing of any steps defense counsel could have or would have taken to improve the defense if a more timely disclosure had

---

[10] SUSCOM is the Sussex County branch of the Delaware State Police Communications Section.
[11] At oral argument, counsel for Thompson stated that she thought requesting a continuance would be futile. Where, however, counsel can articulate why a continuance is appropriate, what can be accomplished by a continuance, and how denial of a continuance will prejudice the defendant, counsel should not hesitate to present those facts and circumstances to the judge.

been made.  He has not made a showing that the disclosure the day before the hearing actually caused him any prejudice.  Therefore, we are unpersuaded by his argument that the VOP should be reversed because of untimeliness of disclosure of the evidence against him.

Turning to Thompson's argument that the disclosure of evidence was incomplete, we read Rule 32.1 as requiring disclosure of the evidence the State plans to present at the hearing.  When Thompson objected to the disclosure as being insufficient, the trial court expressly limited the State to presentation of only that evidence which had been disclosed.  This action by the judge remedied Thompson's objection about the alleged inadequacy of disclosure.[12]

Thompson also argues that he was unavailable to testify.  This argument is based on the fact that he exercised his Fifth Amendment privilege not to testify because of the potential future prosecution of the new charges.  We have previously ruled, however, that where new charges form the basis for a VOP, the State is not obligated to pursue the new criminal charges before it proceeds with the VOP.[13]  The "unavailability" of which Thompson speaks is simply a natural consequence of his election to exercise his Fifth Amendment rights in the VOP proceeding.

---

[12] The Superior Court's discovery rule, Criminal Rule 16, does not apply to VOP hearings. Although the defendant is entitled to disclosure of the evidence to be used against him, he is not entitled to discovery in a VOP proceeding.

[13] *Diaz v. State*, 2014 WL 1017480, at \*2 (Del. 2014).

Thompson also argues that he was not permitted to present his witness'
testimony. This stems from Sheneese Showell's apparent exercise of her Fifth
Amendment rights. However, the trial court accepted a proffer of her testimony
from defense counsel and accepted that proffer as evidence. As a result of the trial
court's acceptance of the proffer as evidence, Thompson suffered no prejudice from
the fact that Showell did not testify.

## II.

Thompson's second claim is that the Superior Court violated his rights under
Amendments IV and XIV of the United States Constitution and Article I § 6 of the
Delaware Constitution by refusing to consider his argument, made at the hearing,
that the evidence against him was the product of an unlawful search and seizure and
should be suppressed.

In support of his argument that the exclusionary rule applies to VOP
proceedings, he relies upon two Delaware cases, both captioned *Jenkins v. State*, and
both involving the same defendant. In the first case, Jenkins was cited for a VOP
based upon new charges in 2005.[14] He filed motions to suppress evidence in both
the VOP proceeding and the criminal proceeding involving the new charges. He
failed to appear for his hearing on the VOP, and the Superior Court judge issued a
bench warrant for Jenkins' arrest and denied the suppression motion for "failure to

---

[14] *Jenkins v. State*, 2006 WL 1911096, at *1 (Del. 2006).

12

prosecute."[15]   Jenkins was subsequently arrested and the VOP hearing was rescheduled.   At that hearing, the motion to suppress was not renewed, and, following testimony from the police officer who arrested Jenkins on the new charges, Jenkins' counsel conceded that a violation of probation had been established.  Subsequently, the motion to suppress in the criminal proceeding on the new charges was granted, and the new criminal charges were dismissed.  Jenkins appealed his VOP adjudication, arguing that "the Superior Court's finding that he violated his probation must be reversed because that finding was based on evidence that was later suppressed in the new criminal proceeding."[16]  This Court affirmed the VOP determination, finding that Jenkins waived renewing the motion to suppress in the VOP proceeding.[17]

The second *Jenkins* decision, in 2010, also involved a VOP.[18]  This second VOP proceeding was also based on new charges.  Jenkins filed a motion to suppress in the criminal proceeding involving the new charges.  He did not, however, file a motion to suppress in the VOP proceeding.  The motion to suppress in the new criminal case was granted and the charges were dismissed.  Jenkins was found to have violated his probation, however, and appealed that finding to this Court.

---

[15] *Id.*
[16] *Id.* at *2.
[17] *Id.*
[18] *Jenkins v. State*, 8 A.3d 1147 (Del. 2010).

13

In summarizing the first VOP proceeding, this Court observed that it had affirmed the earlier VOP determination, "holding that Jenkins had waived his right to present a motion to suppress in the 2005 VOP hearing."[19]

Jenkins argued in the 2010 case that the Superior Court should have considered his motion to suppress at the VOP hearing. This Court rejected that contention, noting that Jenkins never filed a motion to suppress in the VOP proceeding, noting that "it would have been improper for the sentencing judge to decide the search warrant's validity in the VOP hearing where that issue had not been properly raised."[20]

These cases, Thompson argues, establish that a motion to suppress may be filed and considered in a VOP proceeding. However, in both of these cases, the suppression issue was disposed of on procedural grounds. In addition, in the 2010 *Jenkins* case, the Court noted in a footnote that "[t]his Court has not yet addressed whether the exclusionary rule should apply to violation of probation hearings [and] '[W]e do not reach the State's argument that the exclusionary rule does not apply to probation revocation proceedings.'"[21] In those cases, this Court did not consider the substantive question of whether the exclusionary rule applies to VOP proceedings.

---

[19] *Id.* at 1150.
[20] *Id.* at 1155–56.
[21]*Id.* at 1155 n.41 (quoting *Fuller v. State,* 844 A.2d 290, 293 (Del. 2004)).

14

In *Pennsylvania Board of Probation and Parole v. Scott*, the United States Supreme Court held that the exclusionary rule does not apply to parole revocation proceedings.[22] The Court reasoned that "[a]pplication of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings," and "would provide only minimal deterrence benefits."[23] In *Gagnon v. Scarpelli*, the Supreme Court stated that it perceived no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation. . . ."[24]

In *Bruton v. State*, a parole violation case, this Court recognized that in *Scott* the United States Supreme Court "has declined to extend the exclusionary rule to proceedings other than criminal trials."[25]

In addition, nine United States Circuit Courts of Appeal have held that the exclusionary rule does not apply in probation revocation proceedings.[26] In one of those cases, the Third Circuit Court of Appeals explained the rationale of not

---

[22] 524 U.S. 357, 364 (1998).
[23] *Id.*
[24] 411 U.S. 778, 782 (1973).
[25] 2001 WL 760842, at *1 (Del. 2001).
[26] *See, e.g., United States v. Armstrong,* 187 F.3d 392, 393 (4th Cir. 1999); *United States v. Finney,* 897 F.2d 1047, 1048 (10th Cir. 1990); *United States v. Bazzano*, 712 F.2d 826, 830–34 (3rd Cir. 1983); *United States v. Frederickson,* 581 F.2d 711, 713 (8th Cir. 1978); *United States v. Winsett*, 518 F.2d 51, 53–55 (9th Cir. 1975); *United States v. Farmer,* 512 F.2d 160, 162–163 (6th Cir. 1975); *United States v. Brown,* 488 F.2d 94, 95 (5th Cir. 1973); *United States v. Hill,* 447 F.2d 817, 819 (7th Cir. 1971); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163 (2d Cir. 1970).

extending the exclusionary rule to probation revocation proceedings, in part, as follows:

> Application of the exclusionary rule to probation revocation proceedings would interfere significantly with the state's ability to ensure that conditions of probation were being met. As a result, the state's ability to protect society from additional antisocial acts committed by probationers, and ultimately its ability to achieve the remedial purposes of the probation system, would be impaired.[27]

No federal authority has been brought to our attention, and we aware of none, which has held that the exclusionary rule applies to probation revocation proceedings under the Federal Constitution. We have no reason not to follow what appears to be the entirety of the federal weight of authority, and hold that the exclusionary rule does not apply to probation revocation proceedings under Amendments IV and XIV of the Federal Constitution.

We have not previously considered whether the exclusionary rule applies to probation revocation proceedings under Article I § 6 of the Delaware Constitution. In the Superior Court, Thompson did not separately argue that the Delaware Constitution requires application of the exclusionary rule in probation revocation proceedings. In his opening brief, Thompson does not undertake any analysis of Delaware's Constitution separate and apart from his general argument that the exclusionary rule should apply. Our case law, however, establishes a framework to

---

[27] *Bazzano*, 712 F.2d at 834.

be followed when one seeks to establish that the Delaware Constitution provides greater rights than the Federal Constitution.[28] Mere conclusory assertions that the Delaware Constitution has been violated are not sufficient to present a question whether such is the case.[29] As we have previously said:

> A proper presentation of an alleged violation of the Delaware Constitution should include a discussion and analysis of one or more of the following non-exclusive criteria: 'textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions, and public attitudes.'[30]

No such showing was made or attempted in Thompson's opening brief. Accordingly, Thompson's argument that the exclusionary rule applies under Delaware's Constitution has been waived, and we do not here consider that question.[31]

### III.

Finally, Thompson contends that the evidence against him was insufficient to support a finding that he violated his probation.

---

[28] *Jones v. State*, 745 A.2d 856, 863–865 (Del. 1999).

[29] *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005) ("In the future, conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal.").

[30] *Wallace v. State*, 956 A.2d 630, 637–638 (Del. 2008) (citations omitted).

[31] In its answering brief, the State correctly argued that Thompson had not adequately raised whether his rights were violated under the Delaware Constitution in his opening brief. Thompson expanded upon his argument concerning his rights under the Delaware Constitution in his reply brief. Under Supreme Court Rule 14(c)(i), however, material that should have been included in a full and fair opening brief should not be presented for the first time in a reply brief.

17

Here the evidence included the officer's observation of Thompson committing a traffic violation by following too closely. The evidence also included Thompson's suspicious statement that the K-9 would probably alert to the green fluid, which can reasonably be viewed as showing a consciousness of the marijuana in the center arm rest. This consciousness was later confirmed by his admission that marijuana was in the center arm rest. His statement that there was nothing illegal in the vehicle "that belonged to him" also creates an inference that he was aware of the suspected marijuana found by the officer in the vehicle. When asked, Thompson admitted that his fingerprints would be found on the firearm, an admission which creates an inference that he had held the firearm in his hand. Since he is a person prohibited, possession of a firearm would be a violation of his probation.[32] This evidence, taken as a whole, is sufficient to support a finding that Thompson was in violation of his probation. There was no abuse of discretion on the part of the trial judge by so finding.

The judgment of the Superior Court is **AFFIRMED**.

---

[32] Thompson is a person prohibited because of previous convictions.

18

**SEITZ**, Justice, concurring:

Although I believe there are constitutional issues that arise in a VOP hearing that this Court might eventually address,[33] those issues have not been adequately raised in this appeal. Thus, I concur in the Panel's decision to affirm the Superior Court's judgment in this case.

---

[33] *See, e.g., State v. Mosley*, 179 A.2d 350 (N.J. 2018).