IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVIN COLEMAN, | § | |
| | § | No. 192, 2021 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID Nos. 1303012706 (K), |
| STATE OF DELAWARE, | § | 1303004663 (K) |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: October 19, 2022
Decided: January 3, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant, Devin Coleman, filed this appeal from a Superior Court order finding that he violated the terms of his probation and conditional release. The primary issue on appeal is whether the Superior Court erred in denying Coleman's motion to suppress. For the reasons set forth below, we affirm the Superior Court's judgment.

(2) In June 2020, Coleman began serving conditional release for a possession of a firearm by a person prohibited ("PFBPP") conviction in Criminal ID No. 1303012706 and Level III probation for disregarding a police signal, second-

degree conspiracy, and second-degree reckless endangering convictions in Criminal ID No. 1303004663.

(3)    Coleman, along with others, became the subject of an investigation that included a wiretap of his phone. Probation Officer Ricky Porter was a member of the task force conducting the investigation.

(4)    On July 21, 2020, another member of the task force investigating Coleman, Dover Police Officer Robert Cunningham, advised Porter that Coleman had made incriminating statements on a monitored phone call. Cunningham told Porter that he recognized Coleman's voice on the call and that the monitored phone number belonged to Coleman. According to Porter, Cunningham also told him that, during the monitored call, Coleman said that he had purchased firearms and possessed those firearms in his hotel room, Room 117 at the Capital Inn. Coleman was a person prohibited from possessing a firearm.

(5)    Porter confirmed that Room 117 was the address Coleman had identified to Probation & Parole as his address. Porter had also seen Coleman in the doorway of Room 117 a few days earlier. Porter wanted to act on the information provided by Cunningham immediately, but Coleman was in transit and there was not a safe opportunity to contact him.

(6)    On the morning of July 22, 2020, law enforcement officers conducting surveillance observed Coleman, carrying a backpack, enter Room 117. Porter

promptly contacted his supervisor, Joel Duquette, to obtain permission to conduct an administrative search of Coleman's hotel room. After Duquette and Porter went through the checklist factors in Probation and Parole Procedure 7.19, Duquette verbally authorized the search.

(7)   Porter, another probation officer, and a Dover police officer then approached  Room 117.  Porter smelled marijuana.  After Porter knocked on the door, Coleman looked out the window, closed the curtain, and took a long time to open the door.  The odor of marijuana became stronger when Coleman opened the door.  In addition to Coleman, two women and a man were in the room.  Two bundles of what appeared to be heroin were in plain view on the bed.

(8)   The probation officers conducted an administrative search of the room. Porter found two firearms—a .40 caliber Smith & Wesson and a 9mm Ruger—in a backpack on the floor next to the television stand.  There was also mail with Coleman's name on it in the room.  Following the search, Porter electronically filed the Procedure 7.19 checklist, which Duquette electronically signed.

(9)   Coleman's probation officer, Christopher Nichols, filed administrative warrants for Coleman's violation of conditional release and probation.  Nichols alleged that Coleman had violated his conditional release and probation by committing new criminal offenses (PFBPP and Possession of Ammunition by a

3

Person Prohibited)[1] and possessing a firearm without Nichols' permission. After several continuances of a hearing on the violations, Coleman's counsel filed a motion to suppress on November 23, 2020. Coleman sought suppression of the firearms and other evidence found in the hotel room based on the probation officers' failure to comply with Procedure 7.19. In its response to the motion to suppress, the State included the administrative checklist. The State explained that the use of "confidential source" in the checklist was a temporary means of preventing the wiretap from becoming public.

(10) During a December 8, 2020 conference, the Superior Court discussed with counsel the logistics of a combined hearing on the motion to suppress and the violations of conditional release and probation. At the December 11, 2020 hearing, Coleman's counsel advised that Coleman wished to represent himself. The Superior Court conducted a limited colloquy with Coleman, found that Coleman had waived his right to proceed with counsel on the motion to suppress and the violations of conditional release and probation, and continued the hearing so that Coleman could receive the exhibits to the State's response to the motion to suppress.

(11) The suppression and violations hearing was scheduled for January 2021, but then rescheduled for February 2021 because Coleman was unavailable due to COVID-19 protocols at the prison. A pre-hearing conference was scheduled for

---

[1] Those charges are the subject of another appeal, *Coleman v. State*, No. 83, 2022.

4

January 27, 2021. On January 19, 2021, the Superior Court advised the parties that Coleman's counsel for the new criminal case should attend the pre-hearing conference because the suppression decision could affect that case. The court advised that if Coleman still wished to represent himself in the combined suppression and violations hearing, the court would conduct a more detailed *pro se* colloquy. The pre-hearing was rescheduled for February 22, 2021.

(12) On February 22, 2021, the Superior Court discussed with the parties and Coleman's counsel for the new charges the possibility that the suppression motion could have an impact on the new charges. Coleman's counsel indicated that Coleman still wanted to represent himself in connection with the suppression motion and violations hearing. After conducting a colloquy with Coleman, the Superior Court found that he had knowingly, intelligently, and voluntarily waived his right to counsel in the violation of conditional release and probation proceeding. The court then went over the procedures for the combined suppression and violations hearing, which would start with the suppression motion and then proceed to the violations of conditional release and probation. Coleman's counsel for the new charges received permission to attend the hearing if he was available.

(13) On March 16, 2021, April 6, 2021, and April 13, 2021, the parties presented evidence regarding the motion to suppress. On April 13, 2021 and April 29, 2021, the parties presented evidence regarding the violations of conditional

release and probation.  The Superior Court invited the parties to submit supplemental arguments within fourteen days if they wished to do so.  Coleman submitted supplemental arguments.  The State did not.

(14)   On May 27, 2021, the Superior Court issued its decision on the motion to suppress and the violations of conditional release and probation.[2]  The Superior Court denied the motion to suppress, concluding that Probation and Parole ("P & P") had substantially complied with Procedure 7.19.[3]  As to the violations of conditional release and probation, the Superior Court held that the State had shown by a preponderance of the evidence that Coleman had violated his conditional release and probation.[4]

(15)   On June 10, 2021, the Superior Court sentenced Coleman for his violations.  As to the PFBPP conviction, the Superior Court revoked Coleman's conditional release and noted that the maximum expiration date of that sentence was March 14, 2021.  As to the other convictions, the Superior Court sentenced Coleman as follows: (i) for disregarding a police signal, two years of Level V incarceration, suspended after one year served under 11 *Del. C.* § 4204(k) for decreasing levels of supervision; (ii) for second-degree conspiracy, two years of Level V incarceration, suspended after six months for decreasing levels of supervision; and (iii) for

---

[2] *State v. Coleman*, 2021 WL 2181428 (Del. Super. Ct. May 27, 2021).
[3] *Id.* at *5-7.
[4] *Id.* at *8-9.

disregarding a police signal, two years of Level V incarceration, suspended for decreasing levels of supervision. The Superior Court discharged Coleman from probation as unimproved for the second-degree reckless endangering conviction. This appeal followed.

(16) Coleman's arguments on appeal may be summarized as follows: (i) the State violated 11 *Del. C.* § 2407 by failing to provide an inventory notice of the wiretap order and by failing to provide the wiretap order and application; (ii) the Superior Court erred in denying Coleman's request to subpoena his former VOP counsel, the former prosecutor for the State, and Cunningham; (iii) the Superior Court erred in holding that P & P complied with Procedure 7.19 in conducting the administrative search of Coleman's hotel room; and (iv) the State violated Superior Court Criminal Rule 32.1 by failing to produce the audio recording of the call in which Coleman indicated he was buying firearms.

(17) We review the denial of a motion suppress evidence after an evidentiary hearing for abuse of discretion.[5] To the extent the claim of error implicates questions of law, we review *de novo*.[6] We review the Superior Court's revocation of probation for abuse of discretion.[7] Unlike a criminal trial, the State is only required to prove a

---

[5] *Culver v. State*, 956 A.2d 5, 10 (Del. 2008).
[6] *Id.*
[7] *Kurzmann v. State*, 903 A.2d 702, 716 (Del. 2006).

7

violation of probation by a preponderance of the evidence.[8]  The same standards apply to a violation of conditional release.

(18)   Coleman first argues that the Superior Court should have excluded all evidence derived from the wiretap because the State violated 11 *Del. C.* § 2407(g)(4) and (h).  Section 2407(g)(4) provides:

> Within a reasonable time but not later than 90 days after the termination of the period of an order or extensions thereof, the issuing judge shall cause to be served, on the persons named in the order and the other parties to intercepted communications as the judge may determine in that judge's discretion that is in the interest of justice, an inventory that shall include notice of:
>
> a. The fact of the entry of the order;
> b. The date of the entry of the order and the period of authorized interception; and,
> c. The fact that during the period, wire, oral or electronic communications were or were not intercepted.
>
> The judge, upon the filing of a motion, shall make available to the person or the person's counsel for inspection, portions of the intercepted communications, applications and orders pertaining to that person and the alleged crime.

Section 2407(h) provides:

> Prerequisites to use of contents of communication as evidence.—The contents of any intercepted wire, oral or electronic communication or evidence derived therefrom may not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in the courts of this State unless each party, not less than 10 days before the trial, hearing or proceeding, has been furnished with a copy of the court order and accompanying application under which the interception was authorized.

---

[8] *Id.*

8

(19)   Coleman did not raise either of these provisions until the last day of the combined suppression and violations hearing.  The Superior Court did not address Coleman's reliance on Section 2407(g), but rejected his reliance on Section 2407(h) because the motion to suppress did not put the court or State on fair notice of the wiretap issue.[9]  The court also found that Coleman waived receipt of the wiretap-derived evidence by not invoking Section 2407(h) until the last day of the hearing.[10]  Finally, the Superior Court relied on the prosecutor's representation that he had provided the wiretap application and order to defense counsel (which included Coleman's counsel) in the new criminal case on April 12, 2021.[11]

(20)   We agree that Coleman did not raise Section 2407 in a timely manner.  As Coleman points out, he could not include Section 2407 in his November 23, 2020 motion to suppress if he was not aware of the wiretap at that time.  But Coleman and his counsel were aware of the wiretap by December 2020.   The State referred to the wiretap in its December 7, 2020 response.  Coleman sent correspondence to the court with references to the wiretap by the end of December 2020.

---

[9] *Coleman*, 2021 WL 2181428, at *7.

[10] *Id.* at *8.

[11] *Id.*  In that criminal case, Coleman joined in a co-defendant's motion to suppress arguing that the probable cause affidavits supporting the wiretap warrants did not demonstrate the necessity of the warrants.  *State v. Mack*, 2021 WL 4848230, at *1 (Del. Super. Ct. Oct. 18, 2021).  The Superior Court denied the motion.  *Id.* at *5-9.  The motion to suppress conceded that the affidavits provided probable cause to support the wiretaps.  *Id.* at *5.

(21) Yet Coleman did not file an amended motion to suppress based on the wiretap. Coleman did not, as he suggests, need a Section 2407(g) inventory to do so. By December 2020, Coleman had sufficient information—that there was a wiretap of his phone in effect on July 21, 2020, and that his July 21, 2020 call discussing his purchase of weapons was intercepted—to challenge the wiretap and the admissibility of evidence derived from it. He did not invoke Section 2407 until the last day of the combined suppression and violations hearing, more than a month after Porter had testified about the search of his hotel room. Coleman's references to the wiretap in his numerous letters to the Superior Court about access to the prison law library, scheduling, and other matters did not put the Superior Court or the State on fair notice of his Section 2407 claims. The Superior Court did not err in finding that Coleman had waived those claims.

(22) Coleman next contends that the Superior Court erred in denying his request to subpoena his former VOP counsel, the former State prosecutor involved in his VOP, and Cunningham. Coleman requested seven additional witnesses in the trial court, but does not make any arguments concerning those witnesses in his opening brief. He is deemed to have waived any arguments as to those witnesses.[12]

---

[12] Del. Supr. Ct. R. 14(b)(vi)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

(23) As to his former VOP counsel and the former State prosecutor, Coleman argues, as he did below, that their testimony would be relevant because a transcript of a November 12, 2020 office conference reflects that the prosecutor told Coleman's counsel that there was no Procedure 7.19 documentation or checklist for the administrative search of his hotel room. Coleman claims that this means the testimony of these witnesses would be relevant to his theory that the Procedure 7.19 checklist was created long after the administrative search. After reviewing the November 12, 2020 transcript, the Superior Court denied Coleman's request, finding that the prosecutor made it clear at the hearing that he was not at liberty at that time to discuss certain items, which included sealed indictments. Coleman had therefore not shown that the testimony of either witness would be relevant to the proceedings or necessary to his defense.

(24) We agree. At the November 12, 2020 conference, the prosecutor requested a 48-hour continuance of the VOP hearing scheduled for November 16, 2020.[13] The prosecutor stated that one of the reasons for the request was the existence of "compartmentalized information" he could not use and things he could not say on the 16th (but could say on the 18th) because "it would risk lives."[14] After

---

[13] The hearing was ultimately rescheduled for December 11, 2020.

[14] November 12, 2020 Transcript at 3. The Superior Court docket for Coleman's new criminal case reflects that the indictment and warrant application were filed on November 17, 2020. *State v. Coleman*, Cr. ID No. 2010012644A&B, D.I. 1. The Court may take judicial notice of the records of any State court. D.R.E. 202(d)(1)(C).

11

Coleman's counsel stated that he understood that there was no Procedure 7.19 checklist and a motion on the administrative search might be necessary, the prosecutor indicated that some of the issues would be clarified when he could release "some of the compartmentalized information."[15]   With the December 7, 2020 response to the motion to suppress, the State attached the Procedure 7.19 checklist and stated that the phrase "confidential informant" had been used to temporarily prevent the wiretap from becoming public.

(25)    Contrary to Coleman's contentions, the statements of his former VOP and the former prosecutor at the November 12, 2020 hearing do not support his theory that the Procedure 7.19 checklist was created long after the administrative search.  The statements only reflect that the State, for a period of time, was trying to prevent the existence of the wiretap from becoming public.  Coleman has not shown that his former VOP counsel or the former prosecutor would have any testimony relevant to the proceedings.  The Superior Court did not err therefore in denying his request to subpoena those witnesses.

(26)  As to Cunningham, Coleman argued below that all the police officers identified in a police report as necessary witnesses, including Cunningham, were likely to have relevant information.  He did not otherwise explain why Cunningham was a relevant witness.  The Superior Court denied Coleman's request, finding that

---

[15] *Id.* at 6.

12

none of the witnesses were necessary based on Coleman's limited proffer. On appeal, Coleman describes Cunningham as a material witness, who would have relevant information about the monitored phone call that led to the administrative search.

(27) The Superior Court did not err in denying Coleman's request to subpoena Cunningham. Coleman offered almost no explanation for why Cunningham was a relevant witness in the proceedings below. He now emphasizes that Cunningham heard the phone call leading to the administrative search, but Porter testified as to what hold Cunningham told him. Hearsay is admissible in suppression hearings and VOP hearings.[16] Coleman had the opportunity to cross-examine, and did cross-examine, Porter about what Cunningham told him. The central issue during the motion to suppress hearing was whether *Porter* had a reasonable articulable suspicion of illegal activity,[17] not Cunningham's actions or beliefs. Coleman has not shown any error in the Superior Court's handling of his request for subpoenas directed to his former VOP counsel, the former prosecutor, and Cunningham.

(28) Coleman next argues that the Superior Court erred in concluding that P & P substantially complied with Procedure 7.19 in conducting the administrative

---

[16] *Houston v. State*, 251 A.3d 102, 113-14 (Del. 2021); *Kurzmann*, 903 A.2d at 716-17.
[17] *Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010).

search of his hotel room. A probation officer may conduct an administrative search as long as he has reasonable articulable suspicion of criminal activity.[18] Procedure 7.19, promulgated under 11 *Del. C.* § 4321, sets out the procedural requirements for administrative searches.[19] Under Rule 7.19, a probation officer must have a conference with his supervisor before the search and gain his supervisor's approval for the search.[20] The officer must discuss the following factors with his supervisor:

> 1. The officer has knowledge or sufficient reason to believe the offender possesses contraband;
> 2. The officer has knowledge or sufficient reason to believe the offender is in violation of probation or parole;
> 3. There is information from a reliable informant indicating the offender possesses contraband or is violating the law;
> 4. The information from the informant is corroborated; and
> 5. Approval for the search has been obtained from a Supervisor, a Manager, or the Director. If approval is not obtained prior to the search, list the exigent circumstances on the Search Checklist requiring you to proceed with the search.[21]

P & P is not required to complete a physical copy of the pre-search checklist to satisfy Procedure 7.19.[22]

(29) The Superior Court carefully reviewed each factor and the relevant evidence. As to the first factor, Porter testified that he learned from Cunningham, a

---

[18] *Id.*

[19] *Culver*, 956 A.2d at 7.

[20] *Coleman*, 2021 WL 2181428, at *5 (citing Delaware Department of Corrections Bureau of Community Corrections Probation and Parole Procedure No. 7.19 ("DOC BCC 7.19") § VII(A)(5)(a)).

[21] *Id.* (citing DOC BCC 7.19 § VII (e)).

[22] *Pendleton*, 990 A.2d at 420.

law enforcement member of the same task force investigating Coleman, that Coleman talked about buying firearms and having those firearms in his hotel room, Room 117 at the Capital Inn, on a phone number belonging to Coleman. As to the second factor, Porter knew that Coleman was on probation and was a convicted felon who could not legally possess a firearm.

(30) As to the third factor, the source of Porter's information was a police officer who was a member of the same task force investigating Coleman. Cunningham was part of the team monitoring phone calls, while Porter was involved in surveillance. Contrary to Coleman's suggestion, Duquette could approve the search without knowing that it was Cunningham who told Porter what Coleman said on the wiretap. Duquette understood that the source of the information Porter received was the ongoing wiretap of Coleman's phone. As to the fourth factor, Porter confirmed that Coleman had identified the Room 117 address to P & P as his address. Porter had personally seen Coleman in the doorway of Room 117 several days earlier.

(31) Coleman argues that the State failed to show that Porter and Duquette held a case conference before the July 22, 2020 search. His reliance on post-July 22, 2020 dates that appear on P & P paperwork, including the completed Procedure 7.19 checklist, to make this argument is misplaced. As both Porter and Duquette credibly testified: (i) they discussed each of the Procedure 7.19 factors on the phone

15

the morning of July 22, 2020; (ii) Duquette approved the search on that call; (iii) Porter conducted the search; (iv) Porter prepared all of the paperwork, including the Procedure 7.19 checklist that he had previously reviewed with Duquette on the phone, after the search; and (v) Duquette electronically approved the checklist on July 23, 2020. Coleman has not shown that Porter and Duquette failed to hold a conference before Duquette approved the search. The Superior Court did not err in finding that P & P substantially complied with Procedure 7.19.

(32) Finally, Coleman argues that the State was required to produce the wiretap recordings under Rule 32.1(a)(1)(B). This rule provides that a person subject to revocation of probation shall receive "[d]isclosure of the evidence against him."[23] As the State notes, Coleman made various arguments concerning the recordings below, but did not argue that the State was required to produce the recordings under Rule 32.1(a)(1)(B) until this appeal. We review this claim for plain error.[24] "[P]lain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[25]

---

[23] Super. Ct. Crim. R.
[24] Supr. Ct. R. 8.
[25] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

(33)  This Court reads "Rule 32.1 as requiring disclosure of the evidence the State plans to present at the hearing."[26]  A "defendant is entitled to disclosure of the evidence to be used against him," but "is not entitled to discovery in a VOP proceeding.[27]  The State's response to the motion to suppress referred to the existence of recorded phone calls.  In December 2020, the prosecutor and Coleman's counsel discussed with the court whether the State would be offering the recordings at the hearing or relying on witness testimony about the June 21, 2020 call.  The State ultimately chose to rely on witness testimony and did not present the recordings at the hearing.  Under Rule 32.1(a)(1)(B), the State was not required to produce recordings that it did not present or use at the hearing.  Coleman has not shown plain error.  Having considered the parties' positions on appeal and the record below, we conclude that the Superior Court did not err in denying the motion to suppress and finding that Coleman violated his conditional release and probation.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[26] *Thompson v. State*, 192 A.3d 544, 550 (Del. 2018).
[27] *Id.* at n.12.

17