# THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PORT PENN HUNTING LODGE ASSOCATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0328-TMR |
| | ) | |
| MATTHEW S. MEYER, individually and in his official capacity as the County Executive for New Castle County, NEW CASTLE COUNTY, TRACY SURLES, individually and in her official capacity, MARY A. JACOBSON, individually and in her official capacity, RICHARD E. HALL, individually and in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

Date Submitted:  February 4, 2019
Date Decided:  May 9, 2019

L. Vincent Ramunno, RAMUNNO & RAMUNNO, P.A., Wilmington, Delaware; *Attorney for Petitioner*.

Max B. Walton and Kyle Evans Gay, CONNOLLY GALLAGHER LLP, Newark, Delaware; Brian J. Merritt, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware; *Attorneys for Respondents*.

**MONTGOMERY-REEVES, Vice Chancellor.**

For over two decades, the petitioner has worked to develop a parcel of land in southern New Castle County, Delaware. New Castle County has allegedly thwarted the petitioner's attempts. In particular, the petitioner asserts that New Castle County refuses to provide sewer service for the petitioner's proposed development while providing sewer service for developments on nearby land. The petitioner argues that New Castle County's discriminatory conduct violates its rights to substantive due process, equal protection, and just compensation for takings, and constitutes illegal contract zoning. The petitioner requests injunctive relief, declaratory relief, and damages. The respondents move to dismiss the petitioner's complaint for failure to state a claim. For the reasons that follow, I grant the respondents' motion.

## I. BACKGROUND

I draw all facts from the Verified Complaint (the "Complaint"), the documents attached to it, and the documents incorporated by reference into it.[1] At this stage of the proceedings, I take all of Petitioner's well-pled facts as true and draw all reasonable inferences in its favor.

---

[1] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) (noting the "exceptions to the general Rule 12(b)(6) prohibition against considering documents outside of the pleadings" including "when the document is integral to a [petitioner's] claim and incorporated into the complaint." (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1996))).

This saga began in 1997, when New Castle County (the "County") adopted a Unified Development Code and "made a commitment to construct sewers in southern New Castle County to accommodate the growth expected" in that area.[2] "[A]t least 20 years ago" Petitioner Port Penn Hunting Lodge Association ("Port Penn") bought an approximately 320-acre parcel of land (the "Land") in New Castle County, Delaware.[3] Port Penn then attempted to develop the Land into a project called the Preserve, which Port Penn envisioned containing 120 acres of developed property and 200 acres of land in its natural state.[4]

Around the same time, the County established two sanitary sewer districts, the Northern New Castle County Sanitary Sewer Area and the Southern New Castle County Sanitary Sewer Service Area (the "SSSA"). The SSSA included the Land. In 2003, the County passed a resolution reaffirming that "New Castle County made a commitment to construct sewers in southern New Castle County to accommodate the growth expected within this area" and "the implementation of a sewer system in southern New Castle County is a necessary component of good land use planning."[5]

---

[2]    Compl. ¶ 13.

[3]    *Id.* ¶¶ 8-9.

[4]    *Id.* ¶ 9.

[5]    *Id.* ¶ 13.

Port Penn has not pled that the establishment of the SSSA constituted a commitment to extend sewer services to the entire SSSA, nor that New Castle County ever specifically committed to provide sewer service to Port Penn. Port Penn does assert that County officials at the Department of Special Services ("Special Services"), now known as the Department of Public Works, which is responsible for sewer service, gave assurances that the County would provide sewer service to the Land on a fair and equal basis. Specifically, Port Penn contends that "Charles Baker, the General Manager [of Special Services] at that time, informed [Port Penn's] representative that if sewer was provided for anyone in that area the County would certainly not play favorites and in fairness would provide sewer to other property owners in the area."[6] Port Penn adds that Respondent Meyer, a subsequent General Manager of Special Services, "expressed his intent to make public sewer available for the area and to treat all property owners in the Port Penn area fairly and equally."[7]

In early 2000, Port Penn submitted its development plan for the Land to the County for the first time, but the County Land Use Department advised Port Penn in a letter on June 23, 2000, that sewer service was not available and that development would have to wait until it became available.[8] The County Land Use Department

---

[6]     *Id.* ¶ 19.

[7]     *Id.* ¶ 24.

[8]     *Id.* ¶¶ 10-11.

sent another letter advising Port Penn that public sanitary sewer systems were not available "in the vicinity of the site" on June 7, 2001.[9]  On October 26, 2007, the County denied another Port Penn application, writing that "the Department of Special Services had determined that there is no sewer capacity for this proposed development; therefore, this application may not advance . . . until the sewer issue is resolved."[10]

In November 2007, two other property developers in the area filed suit against the County in the United States District Court for the District of Delaware to compel the County to provide sewer service.[11]  The case settled, and the County agreed to provide sewer systems for the developers.[12]  Two other nearby developers, also sued and settled in exchange for commitments to sewer service.[13]

At an undetermined later date, Port Penn once more submitted its development plan for approval.[14]  On May 16, 2017, the County again responded

---

[9]  *Id.* ¶¶ 11-12.

[10]  *Id.* ¶ 7.

[11]  *Id.*

[12]  *Id.* ¶ 21.

[13]  *Id.* ¶ 22.

[14]  *Id.* ¶ 25.

that there was insufficient sewer capacity for the proposed development.[15]  When Port Penn complained of favoritism, the County responded that only properties with settlement agreements would receive sewer service.[16]  For the next several months, Port Penn and the County exchanged letters, with Port Penn repeatedly pressing for sewer service and the County stating that only property owners with settlement agreements would receive sewer service.[17]

Port Penn alleges that in response to the settlements the County reached with other developers, the County installed "a sewer pipe under Route 1 of such a small size that it could only service" the other developers.[18]  Port Penn concludes that the County installed an undersized pipe to create a justification for denying sewer service to Port Penn due to lack of sewer capacity.[19]  Port Penn asserts that the County did this to prevent Port Penn from developing the Land and "to obtain open space for free without having to pay for preservation rights or at the very least reducing the value of the property and thereby the price for same."[20]

---

[15]     *Id.* ¶ 26.

[16]     *Id.* ¶ 27.

[17]     *Id.* ¶¶ 28-31.

[18]     *Id.* ¶ 72.

[19]     *Id.*

[20]     *Id.* ¶ 37.

On May 3, 2018, Port Penn filed its Complaint in this action (the "Complaint"). On May 30, 2018, Respondents filed their Motion to Dismiss. On January 10, 2019, I held oral argument on the Motion to Dismiss. On January 30, 2019, Port Penn filed a letter updating the Court on the status of proposed legislation in New Castle County regarding a proposed moratorium on the creation of septic systems in the area including the Land. On February 1, 2019, Respondents filed a letter in response. On February 4, 2019, Port Penn filed a rebuttal letter.

## II. ANALYSIS

Port Penn asserts five causes of action: (1) a purported substantive due process claim, which asserts that "[t]he County has acted under color of state law in violation of Delaware Law and 42 U.S.C. § 1983 and in violation of Petitioner's rights,"[21] and the County's actions constitute "a blatant violation of the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Delaware Constitution";[22] (2) a purported equal protection claim, which asserts that "[t]he County has intentionally treated Petitioner and its Proposed Development differently from other similarly situated and even adjacent properties

---

[21]    *Id.* ¶ 45.

[22]    *Id.* ¶ 38.

6

in the SSSA"[23] with "no rational or legitimate reason" for the differential treatment,[24] violating "Section 8 of Article VIII of the Delaware Constitution [, which] prohibits the use of public funds for private purposes,"[25] and carrying out *de facto* "'contract zoning' i.e., a contract by the government to zone for the benefit of a private owner, which is expressly prohibited by Delaware law and established case law,"[26] also constituting a violation of "Petitioner's rights to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and the Delaware Constitution";[27] (3) a purported declaratory judgment claim as to Port Penn's rights to sewer service and a preliminary injunction pending trial on the merits to enjoin the County from providing sewer service to Port Penn's neighbors but not Port Penn, as well as damages and fees;[28] (4) a purported estoppel claim and an injunction preventing the County from excluding Port Penn from carrying out sewer plans that provide service to Port Penn's neighbors, as well as damages, fees, and costs;[29] and

---

[23] *Id.* ¶ 48.

[24] *Id.* ¶ 49.

[25] *Id.* ¶ 52.

[26] *Id.* ¶ 53.

[27] *Id.* ¶ 56.

[28] *Id.* ¶¶ 58-61.

[29] *Id.* ¶¶ 62-70.

(5) a purported "injunctive relief temporary restraining order" claim to prevent the County from excluding Port Penn from sewer plans that provide service to Port Penn's neighbors, as well as damages, fees, and costs.[30]

For the sake of analytical clarity, I organize the Complaint into the following six categories: (1) substantive due process claims, (2) equal protection claims, (3) takings claims, (4) contract zoning claims, (5) estoppel claims, and (6) miscellaneous other claims.[31]

Respondents move to dismiss the entire Complaint under Court of Chancery Rule 12(b)(6). The standard for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is well established. When considering a motion to dismiss under Rule 12(b)(6), this Court must "accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the [petitioner's] favor."[32] While the Court must draw all reasonable inferences in the petitioner's favor, it is not "required to accept as true conclusory allegations 'without specific

---

[30]  *Id.* ¶¶ 71-74.

[31]  Although Petitioner states in its Complaint that Respondents' actions violate its rights under both the United States Constitution and the Delaware Constitution, Petitioner makes no arguments based on the Delaware Constitution. On that basis, I limit my analysis for all claims to rights under the United States Constitution.

[32]  *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001)).

supporting factual allegations.'"[33]    "[D]ismissal is inappropriate unless the '[petitioner] would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[34]

### A.    Substantive Due Process Claims

Port Penn argues that the County's denial of sewer services violated its substantive rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution (its "Substantive Due Process Rights" under the "Due Process Clause") by "refusing to allow [Port Penn] access to sewer paid for by the taxpayers."[35]    Port Penn argues that this behavior "is arbitrary, capricious and not rationally related to a legitimate government interest and was and continues to be an unlawful attempt by the County to interfere with [Port Penn's] legal right to develop its property."[36]    Port Penn adds that "[t]he maneuvering and the manipulation by County officials administratively to allow only the three select property owners to have public sewer service at public expense while denying sewer service to all other

---

[33]    *Id.* (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65-66 (Del. 1995)).

[34]    *Id.* (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)) (footnotes omitted).

[35]    Compl. ¶ 44.

[36]    *Id.*

9

property owners even similarly situated adjacent owners can only shock the conscience of a Court of Equity."[37]

"[T]he Constitution protects . . . [rights that are] deeply rooted in this Nation's history and tradition."[38] The Due Process Clause proclaims that no state shall "deprive any person of life, liberty, or property, without due process of law."[39] "The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests."[40] These rights are "so rooted in the traditions and conscience of our people as to be ranked as fundamental."[41] "[T]he protections of substantive due process attach only where a [petitioner] has demonstrated deprivation of an interest that is considered a 'fundamental' right under the United States Constitution."[42] Where "[petitioners] have cited no federal or state authority in which a court has held that [the right they seek is] a fundamental right under the

---

[37]     Pet'r's Answering Br. 11.

[38]     *Moore v. City of East Cleveland,* 431 U.S. 494, 503 (U.S. 1977).

[39]     U.S. Const. amend. XIV, § 1.

[40]     *Washington v. Glucksberg*, 521 U.S. 702, 719-720 (1997).

[41]     *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934).

[42]     *In re New Maurice J. Moyer Acad.*, 108 A.3d 294, 321 (Del. Ch. 2015).

Constitution[,] . . . . [t]he United States Supreme Court[] [directs] that a court should 'exercise the utmost care' when asked to 'break new ground' in the jurisprudence of substantive due process."[43]

Port Penn asserts that it has a fundamental right to sewer service. Port Penn does not, however, cite any cases in support of sewer service as an established fundamental right. To the contrary, several cases state that no such fundamental right exists. For example, the United States Court of Appeals for the Third Circuit held that "[s]ubstantive due process refers to and protects federal rights. The provision of water and sewer services, whether by a municipality or by a private utility company, is not, however, a federally protected right."[44] In a later case, the Third Circuit added that "despite the importance of utility service to the maintenance of a minimally accepted standard of living, an arbitrary and capricious termination of such service by a state actor does not give rise to a substantive due process claim."[45] Most recently, then-Magistrate Judge Stark wrote that "[b]ecause access to public sewers is not a fundamental property right within the protections of the Substantive Due Process Clause of the Fourteenth Amendment, [petitioner] has

---

[43] *Id.* at 322 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

[44] *Ransom v. Marrazzo*, 848 F.2d 398, 411-12 (3d Cir. 1973).

[45] *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989).

11

failed to state a claim on which it could be granted relief. Accordingly, I recommend that [petitioner's] substantive due process claims be dismissed."[46]

In the wake of this specific authority, Port Penn cites no cases in its Substantive Due Process Rights argument supporting the notion that sewer service is constitutionally protected. Port Penn does cite a case in its Equal Protection section supporting the notion that property rights in general receive constitutional

---

[46] *Warren v. New Castle Cty.*, 2008 WL 2566947, at *18 (D. Del. June 26, 2008) (citing *Ransom*, 848 F.2d at 411-12). Then-Magistrate Judge Stark also noted that "the County Code contemplates three types of wastewater treatment. The first of these is *County sewer service* (or 'public sewer' or 'sanitary sewer') which requires the use of public facilities, and is reserved 'on a first come, first serve[d] basis if and/or when sanitary sewer service becomes available, as determined by the Department of Special Services. The second is a *community system* (or 'private sewer'), which is constructed by a private entity and serviced by a private wastewater utility provider, subject to County approval and other terms set out in the County Code and Delaware Code (including required approval by the State [Public Service Commission]). The third and final option is *on-site septic systems*, which may be utilized 'within a County-recognized sewer service area for which sewer capacity or sewer trunk lines do not yet exist,' subject to the approval of the County and the Delaware Department of Natural Resources and Environmental Control ('DNREC')." *Id*. at *2. Port Penn alleges in its Complaint that public sewer was not available. *See, e.g.*, Compl. ¶ 26. Port Penn states in a letter that "on January 22, 2019, the New Castle County Planning board unanimously approved recommendation of the proposed moratorium [on new septic systems], which undoubtedly will be enacted." Letter to Court, Jan. 30, 2019. Port Penn's Complaint does not address a private sewer beyond stating that "[b]y designating the area as a sewer district, but intentionally refusing to provide sewer service the County precluded a private sewer system or septic system." Compl. ¶ 36. In its briefing, Port Penn states that "if the subdivision exceeds 100 lots, the DNREC requires an on site waste water treatment which means a private treatment plant which the County will not allow." Pet'r's Answering Br. 37. This assertion is conclusory, and its relevance is unclear in the substantive due process context.

12

protection.[47] That is true, but it is not specific enough to support a right to sewer service. Port Penn does not tackle the exceedingly difficult task of establishing a new fundamental constitutional right. Port Penn's substantive due process claim fails as a matter of law.[48]

Because Port Penn has failed to allege the deprivation of sewer services violates its Substantive Due Process Rights, I grant Respondents' Motion to Dismiss as to the Substantive Due Process claims.[49]

---

[47] *See* Pet'r's Answering Br. 21-22 (quoting *Mihaly v. Town of Trumball Water Pollution Control Auth.*, 2013 WL 2948329 (D. Conn. June 14, 2013)).

[48] Relying on *Acierno v. New Castle County*, Port Penn argues that this Court should inquire into the motivations of administrative action in investigating potential breaches of its Substantive Due Process Rights. Pet'r's Answering Br. 18 (quoting *Acierno v. New Castle Cty.*, 2000 WL 718346, at *4 (D. Del. May 23, 2000)). I reject this for two reasons. First, after the District of Delaware's decision in *Acierno*, the Third Circuit explicitly rejected the "improper motive" test in the context of substantive due process. *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003). The Third Circuit instead applied the "shocks the conscience" test based on the United States Supreme Court's decision in *County of Sacramento v. Lewis*. 523 U.S. 833 (1998). Second, before the "shocks the conscience" test applies, Port Penn must show a violation of a fundamental right, which Port Penn has failed to do. For those reasons, I decline to apply the improper motive test.

[49] Port Penn also asserts that Respondents violated its Substantive Due Process Rights under the Delaware Constitution. Port Penn does not, however, specify any provisions of the Delaware Constitution that apply or make any arguments about how this analysis would proceed differently under the Delaware Constitution than it would under the United States Constitution. To the contrary, its brief focuses solely on the United States Constitution-based analysis. "Mere conclusory assertions that the Delaware Constitution has been violated are not sufficient to present a question whether such is the case." *Thompson v. State*, 192 A.3d 544, 552 (Del. 2018). Thus, I do not separately analyze this issue.

## B. Equal Protection Claims

Port Penn also asserts that Respondents have violated its constitutional equal protection rights by treating it differently than similarly situated entities. Port Penn states that the "Respondents' actions in treating the Petitioner differently than other similarly situated and even adjacent landowners in the SSSA [were] motivated by an intent to inhibit Petitioner from exercising its constitutional right to develop its property for illegal motives or purpose"[50] and that therefore "Respondents have violated [Port Penn's] rights to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and the Delaware Constitution."[51]

The Fourteenth Amendment to the United States Constitution requires that no State "deny to any person within its jurisdiction the equal protection of the laws."[52] "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

---

[50] Compl. ¶ 55.

[51] *Id.* ¶ 56. Again, because Port Penn does not specify any provisions of the Delaware Constitution that apply or make any arguments about how this analysis would proceed differently under the Delaware Constitution than it would under the United States Constitution, I perform my analysis under only the United States Constitution. *See Thompson*, 192 A.3d at 552. The provision of the Delaware Constitution that Port Penn does identify, Section 8 of Article VIII, discusses municipalities extending credit to, or becoming stockholders in, private corporations and appears in Section E of my analysis.

[52] U.S. Const. amend. XIV, § 1.

discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."[53]  Port Penn advances the argument that it alone suffered unfair differential treatment, which is a "class of one" theory of violation of its equal protection rights.  "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the [petitioner] alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[54]  To succeed on its theory, Port Penn must establish that similarly situated developers existed, that Port Penn was "intentionally treated differently from others similarly situated"[55] who were "*prima facie* identical in all relevant respects,"[56] and that "there is no rational basis for the difference in treatment."[57]

---

[53]     *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441, 445 (1923).

[54]     *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co.*, 260 U.S. 441; *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336 (1989)).

[55]     *Olech*, 528 U.S. at 564 (citations omitted).

[56]     *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

[57]     *Olech*, 528 U.S. at 564 (citations omitted).  Port Penn asserts that "[t]he standard for [a court] interfering with legislative action is stringent because a court is reluctant to interfere with a law enacted by the legislative body.  In this case, however, the decision to reach a settlement with the three select property owners . . . was decided administratively by County officials," implying that the rational basis test should not apply.  Pet'r's Answering Br. 19 (citing *Acierno*, 2000 WL 718346).  The rational basis test, however, applies to the actions of state and local administrative agencies as well as legislators.  *See, e.g.*, *Armour v. City of Indianapolis*, 566 U.S. 673 (2012) (applying the rational basis test to the City of Indianapolis's Board of

15

Port Penn fails to establish that the County has no rational basis for treating it differently than the comparators. "Under rational basis review, legislation enjoys a presumption of validity, and the [petitioner] must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational."[58] Rational basis review "does not require the State to place any evidence in the record."[59] This standard is so deferential to the State that

> even if the Government fails to come forward with its own rationale, "[t]he court may . . . hypothesize the motivations of the . . . legislature to find a legitimate objective promoted by the provision under attack." That is, "[w]e are free to consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature."[60]

Public Works' forgiveness of assessments and holding that "[a]s long as the City's distinction has a rational basis, that distinction does not violate the Equal Protection Clause"); *Dandridge v. Williams*, 397 U.S. 471 (1970) (applying rational basis review when considering a Maryland Department of Public Welfare rule placing a cap on monthly benefits without regard to family size); *Cook v. Bennett*, 792 F.3d 1294 (11th Cir. 2015) (applying rational basis review in both the substantive due process and equal protection contexts; upholding as rational a local school board's decision to assess eleventh and twelfth grade math teachers using tenth grade English tests).

[58]   *Brian B. v. Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d. Cir. 2000).

[59]   *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319 (1993).

[60]   *United States v. Pollard*, 326 F.3d 397, 408 (3d. Cir. 2003) (quoting *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002)).

Respondents argue that "having a plausible land use planning objective for the County's actions, as the County has articulated in its Comprehensive Plan, provides a separate and distinctive rational basis" for any differential treatment.[61] Respondents point out that many courts have found land use planning to be a rational basis for differential treatment.[62] Respondents refer to several other rational bases for their actions: "to settle the prior litigations (e.g., to save litigation costs and to eliminate risk), to engage in rational sewer and land use planning, and to draw the line regarding where it decides to provide sewer service as it deems appropriate";[63] and "costs, budgets, environmental factors, land use planning goals, right of way issues, and system capacity issues."[64]

Port Penn does not adequately address any of the bases that Respondent sets forth, as it must. Most of them it does not address at all. Port Penn provides no rebuttal to the presumption of validity that the County enjoys. Thus, Port Penn fails to overcome the rational basis test, and dismissal under 12(b)(6) is appropriate.

---

[61] Resp's' Opening Br. 24.

[62] *See id.* n.62 (citing *Vision Church v. Vill. of Long Grove*, 468 F.3d 991, 1001 (7th Cir. 2006); *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 595 (3d Cir. 1998); *Hold Fast Tattoo, LLC v. City of North Chicago*, 580 F. Supp. 2d 656, 660-61 (N.D. Ill. 2008)).

[63] Resp's' Reply Br. 22 (citation omitted).

[64] Resp's' Opening Br. 25.

## C. Takings Claims

The Complaint alleges that "[t]he County's conduct is a blatant violation of the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution."[65]  Port Penn explains that "by designating the area as a sewer district, but intentionally refusing to provide sewer service[,] the County precluded a private sewer system or septic system and therefore intentionally and unlawfully precluded any type of development."[66]

"Both the federal government and the states have the power of eminent domain—the authority to take private property when necessary for government activities."[67]  The Takings Clause of the Fifth Amendment of the United States Constitution limits this power, forbidding "private property be[ing] taken for public use without just compensation."[68]  The United States Supreme Court has held that the Takings Clause binds state governments (and, therefore, their subdivisions such

---

[65]     Compl. ¶ 38.

[66]     Pet'r's Answering Br. 35.

[67]     Erwin Chemerinsky, *Constitutional Law:  Principles and Policies* 667 (5th ed. 2015).

[68]     US Const. amend. V.

as counties).[69]  There are two types of takings:  physical (or "possessory"), and regulatory.[70]  "A 'possessory' taking occurs when the government confiscates or physically occupies property."[71]  "A 'regulatory' taking occurs when the government's regulation leaves no reasonable economically viable use of the property."[72]  Port Penn alleges that the County's administrative or legislative action deprives Port Penn of economic opportunity, which is a regulatory takings claim.

"In order to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts, a strong presumption exists favoring the exhaustion of administrative remedies" before courts intervene.[73]  Nevertheless, "in Delaware, application of the doctrine of

---

[69]   *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 n.1 (2002) (quoting *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239, 241 (1897); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980)).

[70]   Chemerinsky, *supra* note 69, at 669.

[71]   Chemerinsky, *supra* note 69, at 669.

[72]   Chemerinsky, *supra* note 69, at 669.  *See also Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."); *Andrus v. Allard*, 444 U.S. 51, 66 (1979) ("It is, to be sure, undeniable that the regulations here prevent the most profitable use of appellees' property.  Again, however, that is not dispositive.  When we review regulation, a reduction in value of property is not necessarily equated with a taking.").

[73]   *Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1190 (Del. 1992).

exhaustion of administrative remedies is a matter of judicial discretion."[74] Section 40.31.600 of New Castle County's Unified Development Code requires a petitioner pursuing a Takings claim to first pursue the administrative remedy of a beneficial use appeal with the New Castle County Board of Adjustment.[75] "A beneficial use appeal is a process by which the County evaluates an allegation that no beneficial use remains in a property and determines that some level of relief from this Chapter [of the County regulations] is warranted."[76] In *Salem Church (Delaware) Associates v. New Castle County*,[77] this Court noted that

> Section 40.31.600 of the County's Uniform Development Code expressly requires that "[a] landowner who has been denied all or substantially all economically viable use of property through the application of [County law] may apply for relief after exhausting all other available avenues of appeal to a County body." [Petitioner] has not alleged that it brought a beneficial use appeal, as provided for by § 40.31.600. Indeed, it argues that it was not required to seek such a determination before bringing its claim. The Court concludes otherwise. As noted by the United States Supreme Court: "a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation. Under our ripeness rules a takings claim based on a law or regulation which is

---

[74]   *Id.* at 1188.

[75]   *Salem Church (Del.) Assocs. v. New Castle Cty.*, 2006 WL 2873745, at *7 (citing New Castle Cty. C. § 40.31.600).

[76]   New Castle Cty. C. § 40.31.600.

[77]   2006 WL 2873745 (Del. Ch. Oct. 6, 2006).

20

alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." The County, thus, could and did require a landowner, such as [Petitioner], to seek a beneficial use review before asserting a takings claim. Accordingly, exhaustion of the remedy afforded by § 40.31.600 of the United Development Code was a necessary precursor to the filing of a takings claim and [Petitioner's] takings claim against the County, therefore, must be dismissed.[78]

It is undisputed that Port Penn did not bring a beneficial use appeal before asserting a takings claim in this Court. Port Penn does not respond to this issue at all in its briefs and therefore concedes the point. As such, I exercise my discretion to apply the "strong presumption" in favor of the administrative exhaustion doctrine and grant Respondents' Motion to Dismiss as to the takings claim.

### D. Contract Zoning Claims

Port Penn also alleges that Respondents' settlements with the other landowners is "creation of essentially a private sewer district for a select few"[79] and that "[c]reating a private sewer district is akin to 'contract zoning.'"[80]

---

[78] *Id.* at *7-8 (quoting New Castle Cty. C. § 40.31.600) (alterations in original); *Tahoe-Sierra*, 535 U.S. at 339-40).

[79] Compl. ¶ 51.

[80] *Id.* ¶ 53.

21

Contract zoning occurs when a landowner and a zoning authority agree to alter zoning to the landowner's benefit in exchange for other promises. "[I]n contract zoning, there is a bilateral agreement committing the zoning authority to a legally binding promise."[81] "[C]ontracts between a municipality and a developer to rezone in accordance with mutual promises are . . . *per se* invalid in Delaware" because "[i]t is elementary that the legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts."[82]

Port Penn relies on *Hartman v. Buckson*,[83] in which Buckson, a developer, sought approval from the Town Council of Camden to construct a subdivision of 88 townhouses on 9.671 acres.[84] The Town Council of Camden rejected the application as noncompliant with the town's zoning ordinance.[85] After negotiations, the sides neared agreement on a zoning-compliant plan for 53 townhouses on 10.919 acres.[86]

---

[81] *Wilm. Sixth Dist. Cmty. Comm. v. Pettinaro Enters.*, 1988 WL 116496, at *4 (Del. Ch. Oct. 27, 1988).

[82] *Hartman v. Buckson*, 467 A.2d 694, 700-01 (Del. Ch. 1983) (quoting *V.F. Zahodiakin Eng'g Corp. v. Zoning Bd. of Adjustment*, 86 A.2d 127, 131 (N.J. 1952)).

[83] 467 A.2d 694 (Del. Ch. 1983).

[84] *Id.* at 696.

[85] *Id.*

[86] *Id.*

When Buckson threatened to sue regarding the zoning ordinance, the Town Council of Camden agreed to a settlement that gave Buckson the right to build 68 houses on 8.193 acres.[87] The Court found that the Town Council of Camden had violated the law by entering into the contract because the Town Council "may not, under the guise of compromise, impair a public duty owed by it" by "bargain[ing] away part of its zoning power to a private citizen. [The town] simply does not possess the authority to normally contract such authority. . . . [T]he contractual agreement is deemed an invalid ultra vires exercise of municipal authority."[88]

The pleadings before me do not indicate that the County rezoned any land as part of the settlement agreements, which is a necessary element of *per se* illegal contract zoning. Furthermore, to the extent that Port Penn challenges County zoning decisions, such a challenge is subject to a strict sixty-day statute of repose, and therefore, is untimely.[89]

Port Penn also speculates that the settlement agreements were "sham" agreements that the County pre-arranged with the other developers. Port Penn asserts that "[o]ne can envision a County official telling Lester[, one of the other

---

[87]     *Id.*

[88]     *Id.* at 699-700.

[89]     *See, e.g.*, *Murray v. Town of Dewey Beach*, 67 A.3d 388 (Del. 2013).

developers,] to just file suit and we won't really litigate, but this will give us a reason to agree to give you sewer."[90] This speculation is unsupported.

Finally, Port Penn notes that "Article II, Section 25 of the Constitution of the State of Delaware is designed for the protection of the general welfare and benefit of the entire public and not for a select few."[91] Article II, Section 25 of the Constitution of the State of Delaware provides that

> [t]he General Assembly may enact laws under which municipalities and the County of Sussex and the County of Kent and the County of New Castle may adopt zoning ordinances, laws or rules limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use, as well as the use to be made of land in such districts for other than agricultural purposes; and the exercise of such authority shall be deemed to be within the police power of the State.[92]

Port Penn appears to argue that Article II, Section 25 supports its contract zoning claim.[93] The connection is unclear, and the Complaint does not plead violation of Article II, Section 25.

---

[90]     Pet'r's Answering Br. 13.

[91]     Compl. ¶ 53 (citing Del. Const. art. II, § 25).

[92]     Del. Const. art. II, § 25.

[93]     *See* Pet'r's Answering Br. 17.

For these reasons, Port Penn's contract zoning claims fail and dismissal under 12(b)(6) is appropriate.

### E.    Estoppel

Port Penn argues that the County is estopped from denying it sewer service. Port Penn asserts that it "reasonably relied on the existing zoning of the Properties and the designation of the area as a sewer district (SSSA) and the representations of County Government Representatives that the Port Penn Area and the Preserve would have sewer service."[94]   Port Penn adds that it "acted in good faith in relying on" those designations and as a result "incurred substantial investment of time and substantial expenses in fees and engineering, etc. on at least two occasions to its detriment",[95] and that "Petitioner was enticed not to also sue [as other landowners did] by County representatives on the express assurances that the County would not discriminate."[96]   Further, Port Penn avers, "the County is now installing sewer service but only to be used by a select few" in violation of its earlier assurances,[97] and Port Penn "has been prejudiced in relying on the representations and actions of

---

[94]    Compl. ¶ 64.

[95]    *Id.* ¶ 65.

[96]    *Id.* ¶ 66.

[97]    *Id.* ¶ 67.

25

the County."[98]  Finally, Port Penn asserts that "[i]t would be highly inequitable and unjust to deny the Petitioner access to the public sewer systems that were promised to Petitioner for some 20 years and which the County has an obligation to provide."[99]

These assertions, while presented as one claim, can be read to make three arguments:  (1) that the County's promises estop the county; (2) that Port Penn's costs estop the County; and (3) that the County has used inappropriate administrative action to deny Port Penn's applications for approval.  I address Port Penn's concerns in turn under the theories of promissory estoppel, equitable estoppel, and arbitrary administrative action.

### 1.    Promissory estoppel

Promissory estoppel requires that "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise."[100]  Port Penn appears to attempt to plead these four elements:  (1) a promise by Baker that Port Penn would get equal treatment; (2) reasonable expectation of the promisor, Baker, that his words would induce Port

---

[98]    *Id.* ¶ 68.

[99]    *Id.* ¶ 69.

[100]    *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000).

Penn not to sue; (3) reasonable reliance by Port Penn on Baker's promise to its detriment by not suing; and (4) injustice in Port Penn not getting sewer access. The Delaware Supreme Court has foreclosed promissory estoppel claims against government entities except in limited circumstances, such as employment.[101] Port Penn does not identify any exception to the general prohibition, so I conclude the prohibition applies.

### 2. Equitable estoppel

In its briefing, Port Penn labels its claim as one of equitable estoppel.[102] The doctrine of equitable estoppel is an awkward fit for Port Penn's attempt to compel the County to act. Equitable estoppel's "object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights."[103] "The standards for establishing a cause of action for equitable estoppel are stringent. The doctrine is applied cautiously, and only to prevent manifest injustice."[104] "The doctrine of

---

[101] *See Harmon v. State*, 62 A.3d 1198, 1201 (Del. 2013) (quoting *McCoy v. State*, 277 A.2d 675, 676 (Del. 1971) (considering a promissory estoppel claim against a Delaware state agency and holding that "[a]s a general rule, however, the 'state is not estopped in the exercise of its governmental functions by the acts of its officers.'").

[102] *See* Pet'r's Answering Br. 30.

[103] *Timmons v. Campbell*, 111 A.2d 220, 224 (Del. 1955).

[104] *Progressive Int'l. Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *6 n.26 (Del. Ch. July 9, 2002) (citations omitted).

27

equitable estoppel may be invoked 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.'"[105]  Here, Port Penn asserts the doctrine in a quest for affirmative relief.

> While equitable estoppel is traditionally employed as a defense, the doctrine is sometimes used affirmatively as a separate or alternative claim or cause of action.  A number of jurisdictions have refused to recognize equitable estoppel as an affirmative cause of action.  The Court of Chancery, however, appears to allow affirmative equitable estoppel claims in appropriate circumstances, albeit not without some reluctance.[106]

"[T]he doctrine of equitable estoppel has traditionally not been favored when sought to be applied against a government entity, [but] it is accepted that in certain circumstances estoppel may be raised to prevent the municipality from enforcing existing zoning codes."[107]  Parties may use equitable estoppel "as a defense against the enforcement of a zoning regulation where:  (1) a party, acting in good faith, (2) on affirmative acts of a municipal corporation, (3) makes expensive and permanent

---

[105]    *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990) (quoting *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903-04 (Del. 1965)).

[106]    Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 15.02[f], at 15-13 to 15-14 (2018) (citations omitted).

[107]    *Dragon Run Farms, Inc. v. Bd. of Adjustment of New Castle Cty.*, 1988 WL 90551, at *3 (Del. Super. Aug. 11, 1988) (citations omitted).

28

improvements in reliance thereon, and (4) the equities strongly favor the party seeking to invoke the doctrine."[108]  "As a general rule, land acquisition costs are not expenditures that satisfy the 'substantial reliance' prong of the equitable estoppel test."[109]  Furthermore, "time spent on the project cannot be included [when] it is not quantified, given any dollar value or broken down" to reflect time spent on relevant matters.[110]

Several cases demonstrate the level of expense required for an equitable estoppel claim.  In *Eastern Shore Environmental v. Kent County Department of Planning*,[111] the Court held that the $500,000 that Eastern Shore spent to upgrade its waste facility in reliance on county promises was sufficient for an equitable estoppel claim at the motion to dismiss stage.[112]  In *Wilmington Materials, Inc. v. Town of Middletown*,[113] the Court held that $88,000 (in 1988) was sufficient to show "substantial reliance" given the small size of the developer.[114]  In *Dragon Run*

---

[108]     *Acierno*, 2000 WL 718346, at *9 (quoting *Miller v. Bd. of Adjustment of Town of Dewey Beach*, 521 A.2d 642, 645-56 (Del. Super. 1986)).

[109]     *Id.* at *10 (citing *Raley v. Stango*, 1988 WL 81162, at *4 (Del. Ch. Jul. 28, 1998)).

[110]     *Raley*, 1988 WL 81162, at *4.

[111]     2002 WL 244690 (Del. Ch. Feb. 1, 2002).

[112]     *Id.* at *4.

[113]     1988 WL 135507 (Del. Ch. Dec. 16, 1988).

[114]     *Id.* at *8.

*Farms, Inc. v. Board of Adjustment of New Castle County*,[115] the court held that purchasing $750,000 in company stock (in 1983) was sufficient to show substantial reliance.[116]  In *DMDY, L.P. v. Board of Adjustment of Sussex County*,[117] the court applied equitable estoppel "[a]lthough petitioner never established what amount was expended" before and after a violation notice out of a total of $40,000 (in 1992), "the Court recognize[d] these improvements were expensive.  The improvements were permanent."[118]  In *Acierno*, after removing costs associated with purchasing the property and paying mortgage interest, the court found that "[t]he remaining expenditures (approximately $38,500) are due to engineering and architectural fees. While by no means insignificant, $38,500 simply does not rise to the level of substantial reliance."[119]  In *Raley v. Stango*,[120] the Court held that "the allowable expenditures of $5,500, whether viewed in isolation or as a percentage of the total project costs, are insufficient to establish substantial reliance."[121]

---

[115]     1988 WL 90551 (Del. Super. Aug. 11, 1988).

[116]     *Dragon Run Farms*, 1988 WL 90551, at *6.

[117]     1994 WL 150082 (Del. Super. Mar. 16, 1994).

[118]     *DMDY, L.P. v. Bd. of Adjustment of Sussex Cty.*, 1994 WL 150082, at *1-6 (Del. Super. Mar. 16, 1994).

[119]     *Acierno*, 2000 WL 718346, at *10.

[120]     1988 WL 81162 (Del. Ch. Jul. 28, 1998).

[121]     *Id.* at *5.

Neither Port Penn's Complaint nor its briefs provide any basis for me to find "expensive and permanent improvements." The Complaint asserts, in total, that Port Penn "incurred substantial investment of time and substantial expenses in fees and engineering, *etc.* on at least two occasions to its detriment."[122] In its answering brief, Port Penn refers to "paying the County the required application and review fees and . . . spending a substantial amount of money for engineering and designing the subdivision";[123] "spending thousands of dollars in engineering";[124] and "thousands and thousands of dollars in engineering, traffic studies, permit fees, etc."[125] Comparing its own case to the $500,000 loss in *Eastern Shore*, Port Penn adds that absent Court action, "the Petitioner will not have the ability to subdivide its property to allow for over 200 lots and will have lost much more than $500,000 in addition to the thousands lost in costs and engineering etc."[126] Port Penn appears to refer to lost profits or land costs. Neither Port Penn's time, nor its unspecified thousands of dollars in costs and engineering, nor its lost profits from not being able to develop over 200 lots, is sufficient to plead expensive and permanent improvements in

---

[122]    Compl. ¶ 65.

[123]    Pet'r's Answering Br. 3.

[124]    *Id.* at 3-4.

[125]    *Id.* at 31.

[126]    *Id.* at 33.

reliance. Port Penn has not pled any dollar amounts at all. Port Penn has also not pled that it made permanent improvements. Port Penn's equitable estoppel claim fails to assert a conceivable claim.

### 3. Arbitrary action

Port Penn also seems to challenge the propriety of the County's decision to decide that no sewer is available.[127] A challenge to a zoning body's approval or disapproval faces a difficult test. "This court can only interfere with the decisions of local zoning bodies when those agencies base their decisions solely on impermissible grounds."[128] "This Court's role in reviewing a zoning decision . . . is limited to a review of the record to ascertain if the statutory procedural mandates have been followed, that the decision is supported by substantial evidence and that it is not arbitrary or capricious or an abuse of discretion."[129] "An arbitrary decision is one 'which is unreasonable or irrational, or . . . which is unconsidered or which is willful and not the result of a winnowing or sifting process."[130] This Court also must

---

[127] *See, e.g.*, Compl. ¶ 70 ("The Respondents have acted improperly, willfully and arbitrary [sic] and capriciously in violation of Delaware Law and the Delaware and United States Constitutions.").

[128] *Coker v. Kent Cty. Levy Court*, 2008 WL 5451337, at *1 (Del. Ch. Dec. 23, 2008).

[129] *Steen v. Cty. Council of Sussex Cty.*, 576 A.2d 642, 648 (Del. Ch. 1989) (citations omitted).

[130] *Coker*, 2008 WL 5451337, at *7.

32

be mindful of overstepping its authority to interfere in matters of municipal discretion. In evaluating a set of claims nearly identical to those before me, this Court noted that "[t]he courts of this State have long held that when a municipality exercises a governmental function 'no court will, in the absence of a showing of bad faith or fraud, assume to invade the municipality's field of discretion.'"[131]

Port Penn has not pled facts sufficient to the task. The Complaint describes the County sending letters to Port Penn in response to each application that explained the County's denials.[132] Port Penn has not adequately pled that the County's decisions were unconsidered, willful, or irrational, or based on impermissible grounds. The Complaint itself lays out the procedure that the County followed in making its decision and does not allege that the County violated that procedure. Therefore, to the extent that Port Penn asserts a claim for an arbitrary ruling, the claim fails.

---

[131] *Ash/Ramunno Assocs., Inc. v. Branner*, 1993 WL 11701, at *3 (Del. Ch. Jan. 19, 1993) (quoting *Lynch v. Town Council of Georgetown*, 180 A. 594, 596 (Del. Ch. 1935)).

[132] *See, e.g.*, Compl. ¶¶ 11-13 (describing multiple letters from the County Planner to Port Penn discussing the absence of public sewer and the process for future applications); *id.* at ¶ 16 (quoting the County Preliminary Plan Review Report's conclusion that "the Department of Special Services has determined that there is no sewer capacity for this proposed development"); *id.* ¶¶ 26, 29.

## F. Miscellaneous Other Claims

Port Penn asserts a third claim for declaratory judgment and a fifth claim for injunctive relief. Both seek preliminary and permanent injunctive relief, damages, and fees. Both overlap entirely with the substantive arguments made in the other claims. I do not analyze them separately.

Port Penn nests several additional claims within its formally captioned causes of action. First, Port Penn argues that the County violated Title 9 and Title 26 of the Delaware Code.[133] The Complaint does not explain what Title 9 and Title 26 of the Delaware Code are, what their purported purposes might be, or how the County might have violated them. The Complaint states that "[s]ome 20 years ago pursuant to Title 9 of the Delaware Code, the County elected to establish a sanitary sewer district for the southern portion of the County . . . ." This is not sufficient to establish a claim.

Second, in its Substantive Due Process argument, Port Penn avers that "[t]he County's actions of creating a private sewer district for a select few disregards Section 40.0500D of the" New Castle County Code.[134] Port Penn explains that § 40.05.000B[135] "provides that public sewer service which requires the use of public

---

[133]   *Id.* ¶ 40.

[134]   *Id.* ¶ 41.

[135]   Port Penn refers to § 40.0500D in its Complaint and § 40.0500B in its Answering Brief and makes the same argument in regard to both. Port Penn appears to refer to

34

facilities is reserved 'on a first come first serve[d] basis if and/or when sanitary sewer service becomes available as determined by [Special Services].'"[136] As Port Penn itself points out, Special Services repeatedly determined that sanitary service was not available, as it is empowered to do under New Castle County Code § 40.05.000B.

In its briefing, Port Penn adds that "the County's refusal to allow Petitioner to access to [sic] public sewer which will be located adjacent to Petitioner's properties and several feet away will violate" § 40.22.320 of the County Code.[137] Port Penn alleges that "[t]he County's agreement to provide pub[l]ic sewer at public expense to only three select properties and to no other properties, not even adjacent properties also violates this County ordinance."[138] Section 40.22.320 only applies "when sewer capacity is available" as determined by the Department of Special Services.[139] Here, the Department of Special Services determined sewer capacity was not available, so there was no mandate to connect to sewer systems. Thus, the administrative body carried out its purpose; the County followed the law; and the claim fails.

---

§ 40.05.000B of the New Castle County Code, as § 40.05.000D discusses school districts. The following section discusses § 40.05.000B.

[136] Pet'r's Answering Br. 14 (quoting New Castle Cty. C. § 40.05.000B) (first alteration in original).

[137] *Id.* at 14-15.

[138] *Id.* at 14.

[139] New Castle Cty. C. § 40.22.320.

Third, Port Penn points out that Section 8 of Article VIII of the Delaware Constitution provides that "[n]o county, city, town or other municipality shall lend its credit or appropriate money to, or assume the debt of or become a shareholder or joint owner in or with any private corporation or any person or company whatever,"[140] and implies that the County violates this law. The Complaint contains no allegation of any lending of credit or assumption of debt, or any shareholding or joint ownership. The Complaint fails to state a claim based on Article VIII, Section 8 of the Delaware Constitution.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED.

**IT IS SO ORDERED**.

---

[140] Compl. ¶ 52 (quoting Del. Const. art. VIII § 8).